Nos. 41,540 and 41,724 (Consolidated).

STAR LUMBER & SUPPLY CO., INC., *Appellant*, v. EDMOND KYLE MILLS a/k/a ED MILLS and LOU E. MILLS, husband and wife; THE COFFEYVILLE LOAN & INVESTMENT COMPANY, INC.; JACK VANE CROSS and LAVERNE T. CROSS, husband and wife; ELDON HAZEN ROGERS and MARILYN A. ROGERS, husband and wife; CARL LEROY SMITH and JUANITA LENA SMITH, husband and wife; JACKIE L. EDMISTON and FRANCIS A. EDMISTON, husband and wife; JOHN DEE BOLES and NORMA KATHERINE BOLES, husband and wife; MYRON R. MACLASKEY; FEDERAL NATIONAL MORTGAGE ASSOCIATION, *Appellees*.

(349 P. 2d 892)

Opinion filed March 5, 1960.

*Morris H. Cundiff*, of Wichita, argued the cause, and *Dale M. Bryant, Garner E. Shriver, Glenn J. Shanahan, Orlin L. Wagner* and *James D. Van Pelt,* all of Wichita were with him on the briefs for appellant.

*Gerald Sawatzky*, of Wichita, argued the cause, and *George B. Powers* and *Robert C. Foulston,* of Wichita, were with him on the briefs for appellees Eldon Hazen Rogers, Marilyn A. Rogers, the Coffeyville Loan & Investment Company, Inc., and Federal National Mortgage Association.

*Orval L. Fisher*, of Wichita, was on the briefs for appellees Edmond Kyle Mills and Lou E. Mills.

*Roy L. Rogers*, of Wichita, was on the briefs for appellees Jack Vane Cross, Laverne T. Cross, Carl Leroy Smith, Juanita Lena Smith, Jackie L. Edmiston, Francis A. Edmiston, John Dee Boles and Norma Katherine Boles.

The opinion of the court was delivered by

FATZER, J.: This was an action to foreclose a mechanic's lien. The principal question presented is whether the trial court's finding that the plaintiff's lien was filed too late is supported by substantial evidence. As will be noted in the course of the opinion, the decisive question is one of fact: whether two isolated orders for materials were furnished under the original contract of the parties.

The action was commenced by the Star Lumber & Supply Co., Inc., to foreclose an alleged mechanic's lien in the amount of $11,391.54. The plaintiff made parties defendant Edmond K. Mills, the builder of five houses on five contiguous lots in a suburban area north of Wichita known as Park City, who, together with his wife Lou E. Mills, were the original owners of the land as joint tenants with the right of survivorship; the purchasers of the five houses and their wives, after the houses had been completed; the Coffeyville Loan & Investment Company, Inc., the mortgage company which took mortgages from the subsequent purchasers; the Federal National Mortgage Association, the assignee of the mortgages; and, one Myron R. Maclaskey, a contractor who cross-petitioned for foreclosure of a lien for labor and materials in the amount of $46.40. Other parties defendant were either dismissed on motion or filed disclaimers.

It is unnecessary to summarize the pleadings of the many parties to this controversy; to do so would unduly lengthen the opinion. Suffice it to say issues were joined and the various defendants denied the validity or existence of plaintiff's lien.

During the trial certain procedural questions arose and were ruled upon by the court, which we deem necessary to note. The defendant homeowners and mortgage companies demurred to plaintiff's evidence, which demurrers were sustained. However, the demurrer of defendant Mills and his wife to plaintiff's evidence was overruled. The defendant homeowner's demurrers to Maclaskey's evidence were sustained, and the mortgage companies did not demur. Thereafter the case proceeded to trial against Mills and his wife to foreclose plaintiff's alleged mechanic's lien, and on the cross-petition of Maclaskey against defendant mortgage companies to foreclose his alleged mechanic's lien. Although the plaintiff timely appealed from the trial court's rulings, in view of conclusions hereafter announced, the sustaining of the demurrers is irrelevant, since the trial court's findings of fact and conclusions of law were based upon all the evidence.

The pertinent findings are summarized and quoted: On June 1, or June 4, 1956, Mills entered into an oral contract with the plaintiff whereby the plaintiff agreed to furnish lumber and materials, and Mills agreed to construct the five houses on the five lots, which would then be sold and plaintiff would be paid from the proceeds. The houses were completed at approximately the same time, and

all were completed before they were sold to the purchasers. The first house was sold October 18, 1956, and the last house was sold January 21, 1957. Plaintiff's lien statement was filed on March 21, 1957.

"6. Plaintiff, in accordance with said agreement, did furnish lumber and material at various times and on various dates, as shown by delivery tickets submitted by plaintiff as Plaintiff's Exhibit 3, commencing shortly after the agreement in June, 1956, *and continuing until September 29, 1956, at which time all houses were completed as contemplated by the parties' agreement.* Plaintiff's Exhibit 3 contains ticket #P4170 dated November 29, 1956, in the amount of $3.74 and ticket #P9319 dated February 8, 1957, in the amount of $5.62. These latter two tickets are found to be for materials not shown to have been contemplated by the parties in their original oral contract, nor required for the completion of said contract, and as is set forth in a succeeding finding of fact, is found not to have been any part of the material furnished under the contract of June 1 or June 4, 1956, between the plaintiff and the defendant, Edmond K. Mills.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"8. On November 29, 1956, and on February 8, 1957, charges in the amount of $3.74 and $5.62 respectively, being the two tickets previously referred to, were made to the account that the defendant, Edmond K. Mills, had with plaintiff. These charges were made by the defendant, Myron Mc-Claskey, to make repairs to some of the captioned houses, but were not materials used in the construction of the houses as contemplated by the parties, and constituted no part of the agreement of June 1 or June 4, 1956, between the plaintiff and the defendant, Edmond K. Mills. It is impossible to determine upon which houses this material was used by the defendant, Myron Mc-Claskey, and he testified that he did not recall. However, this minor repair work performed on the houses by said defendant McClaskey, using the materials set forth above, was done under separate oral agreements and contracts between the defendant Mills and the defendant McClaskey, and that on November 29, 1956, said defendant Mills was not the owner of all of the above lots and houses, and on February 8, 1957, he was not the owner of any of the above lots and houses, nor was he authorized on either date by the owners thereof to make any contract or agreement with McClaskey nor was he authorized on either date by the owners to make any additional repairs or improvements to the houses.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"10. The alleged lien or liens of the plaintiff were not filed within the time provided by the statute." (Emphasis supplied.)

In harmony with its findings, the trial court concluded the liens claimed by plaintiff and the defendant Myron Maclaskey were not valid and were ineffective to give either plaintiff or defendant

Maclaskey any interest in or to the property in question or any lien or charge thereon.

Plaintiff filed a motion for a new trial, which was overruled, and it duly perfected this appeal. Maclaskey did not appeal. Hence, the sole question presented is whether there was any substantial evidence to support the trial court's findings that the two isolated orders for materials on November 29, 1956, and February 8, 1957, in the amounts heretofore stated, used on some of the houses, did not operate to extend the time for the filing of plaintiff's lien.

Plaintiff insists the trial court's findings are contrary to all the evidence and requests this court to reweigh the evidence and determine from the cold record which has the greater probative value. That is not the function of an appellate court (*Davis-Wellcome Mortgage Co. v. Long-Bell Lumber Co.*, 184 Kan. 209, 211, 336 P. 2d 469). Where findings are attacked on appellate review for insufficiency of the evidence, such as the plaintiff here contends, this court's power begins and ends with a determination whether there is any competent substantial evidence to support them (*Davis-Wellcome Mortgage Co. v. Long-Bell Lumber Co.*, 184 Kan. 202, 336 P. 2d 463). This court accepts as true the trial court's findings of fact when based upon substantial evidence; and on appeal it is of no consequence that there may have been much contradictory evidence adduced at the trial, which, if believed by the trial court, would have compelled entirely different findings of fact and an entirely different judgment (*Bayer v. Cockerill*, 3 Kan. 282, Syl. ¶ 7; *Wideman v. Faivre*, 100 Kan. 102, Syl. ¶¶ 2, 5, 163 Pac. 619; *Bruington v. Wagoner*, 100 Kan. 439, 164 Pac. 1057; *Noll v. Graham*, 138 Kan. 676, 27 P. 2d 277; *Stoskopf v. Stoskopf*, 173 Kan. 244, 245 P. 2d 1180; *Davis-Wellcome Mortgage Co. v. Long-Bell Lumber Co.*, 184 Kan. 202, 336 P. 2d 463).

The evidence was conflicting as to whether the two isolated orders were for materials as contemplated by the parties in their contract of June, 1956. According to Maclaskey, after the houses were completed on September 29, 1956, the two order tickets were made by him, written up by plaintiff, and charged to Mills; that the materials were picked up by him and used to make minor repairs to some of the houses. He did not know on which of the houses the work was performed. Primarily, Maclaskey is a rough-in contractor, and, under a prior oral contract with Mills, he framed

in the houses, did the flat concrete work and other work to bring them up to second Veterans Administration inspection. Maclaskey testified the work under that contract was completed before he performed the repair work on the houses in November, 1956, and February, 1957. He further testified that on each of those two occasions he had a separate contract with Mills to do the repair work to meet loan closeout requirements.

Plaintiff's principal officer and agent, Miss Goebel, testified that the two orders were to complete work in compliance with small requirements of the Veterans Administration, or the loan companies prior to closing the loans. Obviously, these repairs were not requirements made by Mills since he had already completed and sold the houses.

Mills testified by deposition that about the first of March, 1957, Miss Goebel talked by telephone to his wife and after remarking that plaintiff's lien time had expired, requested Mills to make some minor purchases so that plaintiff could file a lien. Mills refused. This was after plaintiff had discovered Mills was pressed financially and was about to take bankruptcy. Mills further testified that he did not authorize Maclaskey to order any extra materials and certainly none that were to be charged to his account. There is nothing in the evidence or findings to sustain plaintiff's claim that Maclaskey was Mills' agent or employee, rather than an independent contractor, in ordering materials or performing work on the two dates in question.

We have not set forth all the testimony on this point, however, a careful examination of the record discloses there was ample evidence to support the trial court's findings that the two orders were not a part of the original contract of the parties to furnish materials and supplies to build the houses, but were materials purchased by Maclaskey on two independent contracts with Mills to perform minor repairs on the houses. The findings accord with the holdings of this court that trivial isolated orders, as the plaintiff relies upon in this case, cannot serve to extend the time within which to file a mechanic's lien (*Badger v. Parker*, 85 Kan. 134, 116 P. 242; *Sonner v. Mollohan*, 112 Kan. 148, 210 P. 649; *Sash & Sales Co. v. Early et al.*, 117 Kan. 425, 232 P. 232; *General Air Conditioning Corp. v. Stuewe*, 156 Kan. 182, 131 P. 2d 638).

Not having complied with G. S. 1949, 60-1402 by filing its lien statement within four months from September 29, 1956, the time

the last materials were furnished under the original contract between the parties, the plaintiff's lien statement when filed on March 21, 1957, was fatally defective and no lien was created on the property involved.

The judgment of the trial court is affirmed.