190 Kan. 201 (1962)
372 P.2d 1011
OTTAWA PLUMBING, HEATING AND AIR CONDITIONING, INC., Appellee,
v.
LESTER MOORE, Appellant.
No. 42,863
Supreme Court of Kansas.
Opinion filed July 7, 1962.
Thomas E. Gleason, of Ottawa, argued the cause, and Douglas Gleason and Jules V. Doty, of Ottawa, and Hollis B. Logan, of Topeka, were with him on the briefs for appellant.
Richard C. Byrd, of Ottawa, argued the cause, and Robert A. Anderson and James G. Kahler, of Ottawa, were with him on the briefs for appellee.
The opinion of the court was delivered by
FATZER, J.:
Plaintiff commenced this action against Lester Moore to foreclose a mechanic's and materialman's lien on real estate in Franklin County. Issues were joined and trial was by the court which made extensive findings of fact, conclusions of law, and rendered judgment for the plaintiff for $1,457.30 plus interest, and adjudged $1,200 of that amount to be a lien upon the defendant's dwelling.
The pleadings will not be referred to since the findings of fact best tell the story of this controversy, which are summarized as follows:
On or about November 29, 1957, the plaintiff, by its president, entered into an oral agreement with the defendant whereby the plaintiff agreed to design, furnish and install all plumbing, heating and air conditioning in connection with the construction of a new home for the defendant for a total consideration of $4,300. There were no plans and specifications involved other than a general floor plan of the proposed dwelling. As to the plaintiff's contract, the floor plan showed only the location of plumbing fixtures. The plaintiff entered into the agreement with the knowledge that there was no general contractor to construct the dwelling; that it would be one of several independent contractors performing separate portions of the construction, and that it would be required to co-ordinate its work with the other independent contractors.
Construction of the dwelling commenced on November 29, 1957, and continued to July 6, 1958, when the dwelling was occupied by the defendant as his residence. Minor details of plumbing, heating and air conditioning work remained to be completed. Roy Brown, *203 Jr., the plaintiff's principal employee and in charge of the Moore job, performed cleanup work and made minor adjustments until July 29, 1958.
On September 15, 1958, the plaintiff corporation ceased to be actively engaged in the plumbing business and Brown bought plaintiff's stock of merchandise, and began business for himself. Brown agreed to service all jobs previously installed by the plaintiff.
During the fall and early winter of 1958, defendant contacted Brown on several occasions to make adjustments in the heating system and duct work in an attempt to improve the functioning of the blower and controls. The Coleman Company, the manufacturer of the furnace and air conditioner, sent representatives to Ottawa to assist in correcting and adjusting the heating and ventilating system. On December 17, 1958, while investigating a complaint from the defendant about drafts, Brown discovered an open air space between two joists leading to the unexcavated portion of the basement. He covered the space with a piece of tin 3 feet square for which he was later paid by the plaintiff.
In the regular course of construction, two bathtubs were installed in adjacent bathrooms and connected with hot and cold water and the drain. After installation and while they were in a good condition Brown covered them with a protective coating of eight to ten thicknesses of newspaper which were pasted to the enameled surface. When the tubs were installed, the bathrooms were not completed but were only framed in, that is, the 2 x 4 studdings were in place. The plaster or sheetrock was not in place and there was work to be done by the carpenters above and below the tubs.
When the protective paper was removed and the tubs cleaned in preparation for occupancy of the dwelling, blemishes or defects were discovered in both tubs. The tub in the west bathroom was found to be damaged by an indentation about the size of a fingernail, which had the appearance of being struck by a sharp instrument from the outside. There was no evidence that this blemish was caused by plaintiff's workman. When the protective paper was removed from the tub in the east bathroom, a patch of the porcelain surface covering approximately 2 x 3 inches came off in one piece. The evidence established by the size and shape of the porcelain removed from the tub that the tub was either defective or it was hit by a blow on the under or cast iron side. The district court found that the evidence failed to establish that the blemish was due to a defect or that it was caused by an act of one of plaintiff's workmen.
*204 During the course of construction the plaintiff and the defendant agreed to certain charges for extra items outside the original contract, which totaled in the sum of $257.30. The district court found that the contract for such extras was completed more than four months before the lien in question was filed and the plaintiff was not entitled to a lien for such amount.
On April 15, 1959, the plaintiff filed a mechanic's and materialman's lien claiming that the last work done under the construction contract was performed on December 17, 1958. Within one year of the filing of the lien statement this action was commenced.
The district court concluded as a matter of law that the plaintiff substantially performed the original contract; that the defendant had paid $3,000, and there was due and unpaid on the original contract $1,300; that the defendant was entitled to a set-off of $100 for expenses he incurred in correcting defects and in completing installation including the shower doors, and that the plaintiff was entitled to a lien on the real estate in the amount of $1,200.
In harmony with its findings of fact and conclusions of law the district court entered judgment for the plaintiff and against the defendant in the amount of "$1,200.00 which is the balance due on the original contract less a set-off in the amount of $100.00 for expenses incurred by defendant" with interest at 6 percent from December 17, 1958, and also entered judgment against the defendant in the amount of $257.30 for the extra items outside the original contract and for interest. The district court ordered that if the judgment was not paid within 40 days, the lien be foreclosed and the property sold.
The defendant contends that the finding as to substantial performance of the contract is based upon the erroneous conclusion that the plaintiff did not have the burden of proving that the damage to the bathtubs was caused by the negligence of others, or that the plaintiff was obligated to furnish bathtubs free from defects or blemishes as a part of the completed contract. It is argued that the contract was indivisible which required the plaintiff for a lump sum to design, furnish and install plumbing, heating and air conditioning in the defendant's dwelling, and that before it can recover, it must prove that when the contract was completed and the work accepted by the defendant, the bathtubs were then free from defects or blemishes. In making the contention it is urged the mere fact that more than one contractor was involved in the construction of the *205 dwelling did not alter plaintiff's obligation to defendant normally incident to the general contractor-owner relationship.
The parties are agreed that had the plaintiff been the general contractor to erect the dwelling, it would be required to bear the loss occasioned by the accidental damage to the bathtubs before completion of the dwelling. But that was not the case. Hence, we think the question for decision may be stated thusly: Where there is no general contractor, as between the property owner and the contractor who has contracted to do certain parts of the work of erecting an entire structure, who must bear the loss for damage to property installed during the period of construction without fault of either party? The question is one of first impression in this jurisdiction.
The district court concluded that, and we think correctly, where the plaintiff, being one of several independent contractors employed in the building of a new home, agreed to furnish and install the bathtubs and they were installed and covered in good condition, and later after workmen other than plaintiff's worked around, over and under the tubs they were found to be blemished, the plaintiff was not chargeable with the damage due to the blemishes which were discovered when the house was being prepared for occupancy, in the absence of proof that the blemishes were caused by the negligent acts of plaintiff's workmen. The latter having not been established, the defendant was not entitled to judgment against plaintiff for damage to the tubs. Further, that once installation of the tubs by plaintiff was completed and the area vacated to make way for workmen of other contractors, the tubs became the property of defendant and plaintiff's warranty as to soundness of materials ended.
The case of Carroll v. Bowersock, 100 Kan. 270, 164 Pac. 143, L.R.A., 1917 D, 1006, is not factually in point, but otherwise tends to support the conclusion announced. See, also, 9 Am. Jur., Building and Construction Contracts, § 63, pp. 45, 46, 17 C.J.S., Contracts, § 516, and Anno: 53 A.L.R. 116.
To detail the testimony of the witnesses would unnecessarily extend this opinion. The evidence has been carefully examined and it amply supports the district court's finding that the tubs were free from defects when installed and there was no evidence that the blemishes were caused by the plaintiff's workmen.
It is next argued that assuming, arguendo, it is determined the *206 plaintiff substantially performed its contract and is entitled to recover, it failed to file its lien statement within the statutory period. On this point the question is basically whether the installation of the sheet metal on December 17, 1958, by Brown and the payment by the plaintiff therefor constituted the furnishing of material and labor under the original contract, it being conceded that the lien statement was filed within four months from that date. It is urged that such material and labor were not a part of the original contract but merely was something done to fulfill implied warranties of material and workmanship, and General Air Conditioning Corp. v. Stuewe, 156 Kan. 182, 131 P.2d 638, is relied upon.
We agree with what is said and held in the Stuewe case that the mere inspection, regulation and testing of equipment would not be sufficient to extend the time in which a mechanic's lien could be filed. However, in the instant case the district court's finding No. 9 was that "this installation was necessary for the completion of the installations specified by the original contract and improved their performance." There was ample evidence to support the finding. (Star Lumber and Supply Co. v. Mills, 186 Kan. 204, 349 P.2d 892.) The test as to the time when a piece of work is completed under G.S. 1949, 60-1402, in order to preserve a lien is not determined by the amount of work done, but whether the unfinished work was a part of the original contract, necessary to be done to complete the job and comply in good faith with the requirements of the contract. (Badger v. Parker, 85 Kan. 134, 116 Pac. 242; Dickey v. Guaranty Co., 107 Kan. 605, 193 Pac. 346; Sonner v. Mollohan, 112 Kan. 148, 210 Pac. 649; White Lumber Co. v. Fulton, Adm'r., 116 Kan. 694, 229 Pac. 363; Sash & Sales Co. v. Early et al., 117 Kan. 425, 232 Pac. 232; Citizens First Nat'l Bank v. Jefferson County Comm'rs., 126 Kan. 90, 267 Pac. 12; W.S. Dickey Clay Mfg. Co. v. Snyder, 138 Kan. 146, 23 P.2d 592.)
We have carefully examined the record and find no error. The judgment of the district court is affirmed.