On Rehearing.
Before TATE, FRUGÉ, SAVOY and HOOD, JJ.
TATE, Judge.
The plaintiff-appellant’s application for rehearing was granted because by it our attention was directed for the first time to a relevant contractual provision which we had previously overlooked.
The plaintiff Rayner sues to recover for substantial damage to electrical features installed by him under a subcontract. He appeals from dismissal of his suit.
Pertinently for determination of present issues, the facts show:
The defendant general contractor (“Jones”) had entered into a contract to construct a new city hall. Jones subcontracted the electrical work to the plaintiff Rayner. The electrical subcontract included the installation of six transformers. Rayner installed them in a transformer vault constructed by Jones for that purpose.
In the transformer-vault’s roof at the time there had been left a roof opening for a drainpipe to be installed later. When the transformers were installed, in order to protect them from rain Jones had prevented leakage through the drain opening by placing a 5-gallon can over the hole sealed with tar, felt, and plastic cement.
For reasons we hold to be unexplained by the evidence in the record, some two months after the transformers covering the drain-hole had been installed, the can was removed by an unknown agency before it happened to rain heavily. As a result three of the transformers were seriously damaged through being short-circuited because of the rainwater falling into their works.
Prior to the application for rehearing, our attention was not directed to Article 51 (“Protecting Site and Buildings”) of the General Conditions of the Jones’s general contract. This provides that the general contractor must “Provide and maintain suitable coverings in all openings of windows; and padlocked temporary doors .at all not otherwise enclosed openings as soon as roof is on and provide and maintain suitable covering for all work liable to damage from any cause during the progress of the construction. The [General] Contractor will be responsible for any unnecessary or unwarranted damage done to the building throughout the progress of the work. He will also be responsible for damage to any *358 other features of the site.” See Exhibit P-1, GC-13.
Under the terms of this provision, therefore, Jones as general contractor had the general responsibility to provide and maintain a suitable covering for the roof hole in order to prevent the readily foreseeable damage which resulted when the water leaked through the hole into the transformer vault so as to damage the transformers (which had been energized in order for use by Jones in the building operations). The specifications pertaining to the plaintiff Rayner’s electrical subcontract specifically provide that the contract’s “General Conditions” apply to the electric work subcontracted. Exhibit P-1, Division 45-1.
In our original opinion, on the other hand, we had held that the responsibility to prevent leaks through the roof damaging the transformers was a contractual obligation assumed by the electrical subcontractor. In so holding, we relied upon a quoted clause of the electrical specifications to the effect that the subcontractor “shall continuously maintain adequate protection of all his work from damage * * In the absence of other contractual regulation, we then felt that under this particular clause the electrical subcontractor had contractually assumed this responsibility until his entire electrical subcontract was completed, even as to portions completed and being used by the general contractor.
On further reflection, however, and in the light of the above-quoted Article 51 of the General Conditions (not previously called to our attention), we now conclude •that the contractual duty of the electrical subcontractor in the present case to “maintain adequate protection” of his w.ork is qualified by such subcontractor’s right to rely upon the general contractor’s performance of his own contractual obligation to provide and maintain adequate coverings so as to prevent damaging leakage onto work of subcontractors previously installed. -In short, in reasonably safeguarding his own work, each subcontractor was entitled -to rely reasonably upon adequate performance by the general contractor of his obligation to protect the site and buildings; rather than each subcontractor being separately required to safeguard the site and buildings by each hiring a watchman or each inspecting constantly for roof-leakage to prevent damage in the event that the general contractor defaulted in his own contractual duties in this regard.
Considering the contract as a whole with regard to the respective safeguarding responsibilities of the general contractor and electrical subcontractor as set forth by the two clauses, we are convinced that the plaintiff Rayner did not violate his obliga-j tion to provide “adequate protection” for the transformers previously installed by him, and that in our original opinion we were in error in concluding otherwise. Under the terms of the general contract, the general contractor Jones had the express duty to maintain suitable covering for all work liable to be damaged by the failure to provide such. Since Jones had instructed the plaintiff subcontractor to install the transformers under the roofing and at the place situated, the latter could reasonably assume that the general contractor would comply with its contractual duty to provide and maintain a suitable covering to protect the transformers from damage' of the nature involved herein.
There is no question but that the failure to maintain adequate covering over the drainpipe-hole in the roof was the cause of the substantial damage sustained by the plaintiff’s transformers situated beneath the roof-opening. It was the defendant Jones’s contractual duty to provide and maintain adequate covering for this hole, not that of the plaintiff Rayner (at least in the absence of reasonable knowledge that further precautions on his part were necessary to protect his own work, which is not shown here).
Upon proof that the defendant Jones’s failure to maintain adequate covering as required by the contract was the *359 cause of the plaintiff’s damage, the plaintiff has in our opinion sufficiently proved his right to recover for damages caused by the defendant’s failure to perform his contractual duty; there being no preponderant exculpatory proof that such failure resulted from some cause which legally excuses the. defendant for the default. See Mathews v. Priest, La.App. 2 Cir., 165 So. 535 and Sanders v. Monroe Sand & Gravel Co., 2 Cir., 7 La.App. 254. Since the defendant contractor’s default in performance of his contractual obligations was proved, the burden shifted to the contractor to prove there was legal excuse for it, which burden was not met since the evidence fails preponderantly to prove any cause of the removal of the covering over the drain-hole. “The general rule that the burden of proof rests on the party having the affirmative of the issue is applicable to actions on contracts, and the usual test employed to determine on which side the burden of proof lies is to ascertain which party would be entitled to a verdict if no evidence were offered on either side of the issue.” 17A C.J.S. Contracts § 578.
Somewhat similarly, in the absence of a contractual agreement otherwise, the general rule is that a subcontractor who contracts to contribute only a part of the work and materials for a particular structure, may recover for the work he has performed and the equipment he has installed if his work is destroyed before entire completion by the general contractor, unless the negligence of the subcontractor or his employees contributed to the loss. Bethea v. Savarese, La.App. 4 Cir., 159 So.2d 368; Ottawa Plumbing, etc., Inc. v. Moore, 190 Kan. 201, 372 P.2d 1011 (1962); Vilbig Brothers, Inc. v. C. H. Leavell & Co., Tex. Civ.App., 319 S.W.2d 731 (1958); Annotation, Building Contract — Destruction, 53 A.L.R. 103; 13 Am.Jur.2d “Building, etc. Contracts” Section 67; 17A C.J.S. Contracts § 466(2)b.
The plaintiff additionally sued another subcontractor, Central Plumbing, on allegations that Central Plumbing’s employees were responsible for the negligent or wrongful removal of the buckét protecting the transformer-vault from leakage. We find no reason to change the conclusion reached in our original opinion that the plaintiff has not preponderantly proved his allegations in this regard. We find no error in the trial court’s dismissal of the suit as against this defendant.
The right is reserved to all parties to apply for further rehearing. See Uniform Rules of the Courts of Appeal (rev. 1963), Rule XI, Section 5.
The parties hereto have stipulated the damages sustained by plaintiff-appellant to be $5,436.81. For the reasons above assigned, the judgment of the District Court is affirmed insofar as it dismissed the plaintiff’s suit insofar as against the Central Plumbing and Pleating Company, but it is reversed insofar as the judgment dismissed the claim against R. J. Jones and Sons; judgment is now rendered in favor of Elmer Rayner and against R. J. Jones & Sons, a commercial partnership composed of Robert J. Jones, Robert H. Jones, and James E. Jones, in the full and true sum of Five Thousand Four Plundred and Thirty-Six and 81/100 ($5,436.81) Dollars, together with legal interest thereon from date of judicial demand until paid, together with all costs of these proceedings.
Affirmed in part; reversed and rendered in part.
CULPEPPER, J., recused.