No. 47,972

HOLIDAY DEVELOPMENT CO., INC., *Appellant*, v. J. A. TOBIN CON-
STRUCTION COMPANY, *Appellee*.

(549 P. 2d 1376)

Opinion filed May 8, 1976.

*Richard L. Reid,* of Steineger and Reid, Chartered, of Kansas City, argued the cause and was on the brief for the appellant.

*Edward M. Boddington, Jr.,* of Boddington, Brown and Unverferth of Kansas City, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: This action involves the timeliness of a mechanic's lien filed by a materialman for rock furnished a subcontractor and the validity of a personal judgment entered in favor of the materialman and against a lessee of the realty. The materialman prevailed on these issues and the lessee has appealed.

Appellant Holiday Development Co., Inc., leased land owned by the Urban Renewal Agency of Kansas City for a period of ninety-nine years for the purpose of building and operating an office building thereon. Holiday entered into a contract with Wilson & Savage Development Company as prime contractor to build the building and an adjacent asphalt parking lot. In March, 1971, Wilson & Savage subcontracted construction of the parking lot to the Jordon Construction Company. Jordon commenced building the parking lot using base rock purchased by it from appellee J. A. Tobin Construction Company. Tobin began furnishing rock October 11, 1971, and last delivered rock for the project on December 3, 1971, for which it has not been paid.

In January, 1972, Jordon ceased working on the lot and never finished it. Dispute exists between the parties as to when Jordon actually abandoned the project. The trial court made no finding on this. There was also dispute between the litigants as to whether Tobin had by the time of its last delivery on December 3, 1971, delivered all the rock necessary for the parking lot—according to Holiday all had been delivered but Tobin says more was still needed. The trial court resolved that dispute in favor of Tobin.

When Jordon ceased working on the lot in January, 1972, it had not paid for rock supplied by Tobin in the amount of $8,878.34. On April 6, 1972, Tobin by its foreman hand-delivered a letter to Wilson & Savage's construction superintendent stating that Jordon had not yet paid Tobin for the rock. According to Tobin's foreman the construction superintendent stated there were sufficient funds coming to Jordon to pay Tobin and further said, "Don't worry about it, you will get your money". Wilson & Savage's

superintendent testified he never told any Tobin representative he would see that they got their money.

Later there were other conversations between representatives of Wilson & Savage and Tobin wherein the former tried to enlist the latter's services in finishing the parking lot or in assisting Jordon to do so but Tobin was not interested in the conditions offered. Thereafter Wilson & Savage employed Suburban Asphalt Company to finish the parking lot. In all Wilson & Savage had to pay for the parking lot $4,500 more than the contract price with Jordon.

Tobin's rock bill was never paid and on August 11, 1972, it filed a mechanic's lien against Holiday. Holiday then commenced this action against Tobin asking that Tobin's lien be cancelled. Holiday also sought damages because of Tobin's wilful act in clouding its title by the filing of the lien. In its petition Holiday referred to Wilson & Savage as its agent in contracting with Jordon. (Later Holiday tried, unsuccessfully, to amend its petition by deleting this inept allegation, to conform to the evidence that Wilson & Savage was an independent contractor rather than its agent.)

Tobin filed an answer and a three-part counterclaim to the Holiday suit. In the latter, first, it asked for foreclosure of its lien; second, it alleged Holiday through its agent Wilson & Savage agreed to pay Tobin for the rock delivered; and third, it asserted it was a third party beneficiary of the written contract between Wilson & Savage and subcontractor Jordon, and it asked for a personal judgment against Holiday.

Trial to the court resulted in the following judgment:

"The Court finds that Wilson & Savage Development Company entered into a contract with the Holiday Development Company, Inc., for the construction of an office building and that Wilson & Savage Development Company was the agent of Holiday Development Company, Inc. That subsequent to said contract Wilson & Savage Development Company entered into a construction subcontract with the Jordan Construction Company on or about the 17th day of March 1971 for the construction of an asphalt paving lot and work related thereto. That the said Jordan Construction Company subsequent to obtaining this contract did enter into a contract with the J. A. Tobin Construction Company to furnish gravel base for the subject parking lot covered by the contract between Wilson & Savage and Jordan Construction Company. That in connection with this work gravel was furnished and subsequently a mechanic's lien was filed in the Clerk of the District Court's office of Wyandotte County, Kansas on the 11th day of August, 1972.

"The Court finds from the evidence presented that the last rock delivered on the site by the defendant Tobin Construction Company occurred in December of 1971. That there was additional work to be performed and materials furnished by the subcontractor Tobin Construction Company, and that

the job was not complete on the date when the last materials as listed in the lien were furnished.

"The Court particularly finds that said date of last material furnished does not constitute the completion of the contract of the Tobin Construction Company with the Jordan Construction Company and that there was work remaining to be performed by Tobin Construction Company, and that said obligation continued and that the subject lien as filed was filed within the statutory time as provided by K. S. A. 60-1101 and 3.

"Therefore, judgment is entered in favor of the defendant versus the plaintiff in the amount of $8,878.34 and costs, and plaintiff's petition to cancel the lien is denied in all respects."

Holiday appeals from the foregoing judgment.

We consider first the validity of the mechanic's lien, *i. e.,* whether it was timely filed. K. S. A. 1975 Supp. 60-1103 provides in pertinent part:

"(*a*) *Procedure.* Any subcontractor or other person furnishing labor, equipment, material or supplies, used or consumed at the site of the property subject to the lien, under an agreement with the contractor, or a subcontractor of the contractor, may obtain a lien for the amount due in the same manner and to the same extent as the original contractor except the lien statement must state the name of the contractor and be filed within three (3) months after the date material or equipment was last furnished or labor performed by the claimant. . . ."

The trial court found that since more rock was necessary to complete the project appellee Tobin's lien was timely filed even though filed eight months and eight days after rock was last furnished. This conclusion is wrong because there is nothing in the record to support the finding Tobin had a contract, of any kind, to supply all of the base rock for the parking lot project. We further explored this matter at oral argument before this court and Tobin's response confirmed the fact no contract for a package deal existed for the furnishing of the necessary rock and Jordon was free to buy Rock elsewhere if it desired or any was needed. Thus the court's finding that further rock was needed to complete the project becomes immaterial in determining the timeliness of the filing of the lien and the matter of when Jordon abandoned its work is similarly of no moment.

Mechanic's liens are statutory in origin and we have always held that one who claims a lien has the burden of bringing himself within the purview of the statutes creating it (*Sutherland Lumber Co. v. Due,* 212 Kan. 658, 512 P. 2d 525). As was noted in *D. J. Fair Lumber Co. v. Karlin,* 199 Kan. 366, 430 P. 2d 222:

"This court has always liberally construed our mechanic's lien statutes,

once a lien has attached, but it has consistently held that a mechanic's lien can only be acquired in the manner and upon the conditions prescribed in the statute. . . ." (p. 371.)

K. S. A. 1975 Supp. 60-1103 provides that a subcontractor's lien statement, or that of one furnishing labor or material to a contractor or subcontractor, must be filed within three months after the date material was last furnished or labor performed by the claimant. Tobin was supplying rock as it was requested. When Tobin was not paid for rock it furnished it had to file its lien within three months after the date the last rock was furnished.

Here, if any rock remained to be furnished on the project it was supplied by a third party. A case illustrative of the necessity for a lien claimant to move out in a somewhat analogous situation is *Byrne v. Forbes*, 90 Kan. 557, 135 Pac. 598. There a contractor abandoned a project and the owner completed the building. A subcontractor had furnished material to the contractor and had not been paid. He filed his lien statement but not within sixty days of furnishing the material to the contractor. His lien was denied by the trial court and this court affirmed with the following statement:

". . . The owner simply finished his building in his own way upon his own account and credit after the contractor had abandoned his contract. As a result the plaintiff as a subcontractor was obliged to file its lien within the prescribed time after the last furnishing of material to the contractor, which it did not do." (p. 558.)

The trial court apparently relied on certain of our cases dealing with the question of when a project is completed in order to determine the time for filing a mechanic's lien. These cases deal with a situation where a claimant is under contract either with the owner or a contractor to supply certain labor or materials to a project or to complete a given project—a "package deal" or a turnkey job. The materialman or laborer may work for several weeks and then come back later and do some work or furnish material in order to finish the job and complete his contract. The issue in those cases has been whether the statutory period for filing the lien statement runs from the time the bulk of the contract was completed or from the point the last minor work was done or material furnished. Resolution of the issue turns upon whether the last work done or material furnished was an integral part of completing the contract between the parties or whether it came through another arrangement.

Illustrative of this type of case is *Benner-Williams, Inc. v. Romine,* 200 Kan. 483, 437 P. 2d 312. There the parties entered into an oral agreement whereby the lien claimant was to supply labor and material for the remodeling of a house. Most of the work was done and materials installed during the months of November and December, except for part of a cabinet top which was not installed until March 12th of the following year because of lack of materials. This court found that all of the work done was part of a "package deal" between the parties and the subject of a single contract. Therefore the March 12th work extended the time for filing of a lien for the statutory period from that date. The court held that ". . . The test, under K. S. A. 1967 Supp. 60-1101, as to the time when a piece of work is completed in order to preserve a lien, is whether the unfinished work was a part of the work necessary to be performed under the terms of the original contract to complete the job and comply in good faith with the requirements of the contract. (*Ottawa Plumbing, Heating & Air Conditioning Co. v. Moore,* 190 Kan. 201, 372 P. 2d 1011; *cf. Star Lumber & Supply Co. v. Mills,* 186 Kan. 204, 349 P. 2d 892.)" (p. 487.)

In *Stickney v. Murdock Steel & Engineering, Inc.,* 212 Kan. 653, 512 P. 2d 339, an owner of land contracted with a general contractor for the construction of a Butler steel building. The contract called for certain electrical work which the general contractor subcontracted to plaintiffs under an oral agreement with written specifications and drawings. The major portion of the work under the subcontract was completed in January, 1969, but installation of a water fountain and wiring of a pilot switch remained undone. The water fountain was received by plaintiffs on July 22, 1969, and installed thereafter and the switch was cabled and wired about October 15, 1969. Both items were part of the original contract. Plaintiffs filed their lien November 13, 1969. In holding that the lien was timely filed this court stated that *Benner-Williams* was controlling. Other cases of like import are *Berthot v. Stroble,* 208 Kan. 839, 494 P. 2d 1133, and *Ottawa Plumbing, Heating & Air Conditioning Co. v. Moore,* 190 Kan. 201, 372 P. 2d 1011. More could be cited but they simply are not in point here since they involve either oral or written contracts to supply material or labor for a given project or to fulfill a particular part of a given contract. Here Tobin had no contract to do anything more than that which it actually did and its lien was not filed until more than eight months

after it last performed. Under the statute the lien was not timely filed and it must be held invalid.

Nor is appellant equitably estopped from asserting the defense of untimely filing of the lien. In *Ekstrom United Supply Co. v. Ash Grove Lime & Portland Cement Co.*, 194 Kan. 634, 400 P. 2d 707, we stated:

"It is a settled rule in this state that equitable considerations do not ordinarily give rise to a mechanic's lien. Being created by statute, a mechanic's lien can only arise under the circumstances and in the manner prescribed by the statute. A lien claimant must secure a lien under the statute or not at all. [Citations.] The validity of a lien created solely by statute depends upon the terms of the statute, and parties may not by estoppel enact or enlarge a statute. [Citations.]" (pp. 635-636.)

We turn next to the validity of the personal judgment against Holiday. The trial court entered no finding or reason for its rendition. A subcontractor or materialman generally may not obtain a personal judgment against the owner in the absence of an agreement by the owner to pay (*Hodgson v. Billson*, 12 Kan. 568; *Sash Co. v. Heiman*, 71 Kan. 43, 80 Pac. 16; *Geis Irrigation Co. v. Satanta Feed Yards, Inc.*, 214 Kan. 373, 521 P. 2d 272). Appellee would uphold the judgment on three different bases. The first is that the court impliedly found Tobin to be a third party beneficiary of the contract entered into between Jordon and Holiday by and through Holiday's agent Wilson & Savage. The basis for the assertion is a clause in the contract between Wilson & Savage and Jordon whereby the former was to hold back ten percent of the monthly progress payments to Jordon for its work and material furnished during the particular period, with the retained funds to be paid Jordon after completion of the contract, receipt of certain guarantees and approval by the architect.

In the first place the trial court made no such finding. Had it done so the only law on the subject we know of is against appellee's proposition. The same contention was advanced in *Mortgage Associates v. Monona Shores*, 47 Wis. 2d 171, 177 N. W. 2d 340. The lien claimants there asserted entitlement to the ten percent holdbacks in a construction contract on the theory of third party beneficiary. In rejecting the contention the court noted that the retention provision frequently found in construction contracts is for the benefit of the owner or for the joint benefit of the owner and the contractor's surety or lender, citing *Quinn v. United States*, 99 U. S. 30, 25 L. ed. 269; 13 Am. Jur. 2d, Building, Etc. Contracts, § 21;

and Anno.: Construction Contract—Retention Provision, 107 ALR 960. The court further said:

". . . In order to constitute these subcontractors a third-party beneficiary there must be a promise or the specific intention to benefit them in the agreement between Monona and Associates and the agreement must be made directly and primarily for the subcontractor's benefit. . . . The loaning of money to finance the construction of a building and thus pay contractors is not a third-party-beneficiary contract. While such a contract indirectly inures to the benefit of the contractors, generally there is no specific provision for their direct benefit. . . ." (pp. 190-191.)

Other courts have ruled these provisions do not create rights in favor of third party contractors or materialmen (*Wells v. Williams*, 39 N. Y. [Barbour's] 567; *Harsco Corp. v. Department of Public Works*, 21 Cal. App. 3d 272, 98 Cal. Rptr. 337). The holding in these cases is in harmony with our own. In *Martin v. Edwards*, 219 Kan. 466, 548 P. 2d 779, we held:

"A mere incidental, collateral, or consequential benefit which may accrue to a third person by reason of the performance of a contract, or the mere fact that he has been injured by the breach thereof, is not sufficient to enable him to maintain an action on the contract. Where the contract is primarily for the benefit of the parties thereto, the mere fact that a third person would be incidentally benefited does not give him a right to sue for its breach." (Syl. para. 5.)

The personal judgment cannot stand upon the theory of third party beneficiary. (Throughout our opinion we accord appellee as a ninety-nine year lessee the same status as that of an owner.)

Appellee further says the trial court impliedly found a quasi-contract between appellant and appellee due to appellant's unjust enrichment. Again the trial court made no such finding. The theory of quasi-contract is raised by the law on the basis of justice and equity regardless of the assent of the parties (*Minnesota Avenue, Inc. v. Automatic Packagers, Inc.*, 211 Kan. 461, 507 P. 2d 268). Many courts have considered whether a subcontractor or materialman can obtain a personal judgment against an owner on the basis of quasi-contract or unjust enrichment, in the absence of privity of contract or a direct promise to pay. The overwhelming weight of authority is in the negative (see Anno.: Subcontractor's Recovery Against Owner, 62 ALR 3d 288, § 4, 297-303).

Reasons given for the position include: (1) The mechanic's lien statute was enacted to afford the owner protection after a certain period of time from the claims of a subcontractor or materialman; if the latter did not avail himself of the statutory remedy, he

should not be allowed to circumvent the statute and impose direct liability against the owner on another theory; (2) the prime contractor may already have been paid in full by the owner for the improvements furnished by the subcontractor or materialman and there really is no unjust enrichment; (3) generally the owner may assume suppliers dealing with a contractor will look to him for payment of their obligations and the subcontractor or materialman may not have exhausted his possible remedies against the person to whom he originally looked for payment; and (4) defenses which may be available to the contractor as against the subcontractor or supplier may not be known or available to the owner. These appear to be sound reasons, dependent, of course, on the particular circumstances. We need not labor the matter. The defaulter here was Jordon. By reason of that default $4,500 more was required to complete the job. There was an indication Tobin knew in January, 1972, that Jordon had quit work yet it did nothing. We see no unjust enrichment in the case in support of a personal judgment.

Finally, appellee says the personal judgment can be upheld in that appellant orally agreed, through its agent Wilson & Savage, to pay appellee. Aside from any question of the application of the statute of frauds to a promise to pay the debt of another, and assuming the agency asserted by appellee, we think the contention is without merit. The promise relied upon is simply a statement by Wilson & Savage's superintendent to appellee's foreman: "Don't worry about it, you will get your money". There was no mention of appellant in the statement and nothing in it can be construed as a promise on behalf of appellant to pay anything. If it amounted to a promise on anyone's part it would have to be Wilson & Savage, not appellant.

The judgment of the district court is reversed and the cause remanded with directions to enter judgment for appellant for cancellation of appellee's lien and costs. The record contains nothing indicating wilful or malicious conduct on appellee's part in filing the lien so as to justify an award of damages and appellant's relief should be limited to that directed.

APPROVED BY THE COURT.