No. 110,177

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

GLEASON & SON SIGNS,
*Appellee*,

v.

MADAN RATTAN,
*Appellant*,

and

KANEB INVESTMENT GROUP, LLC,
*Defendant*.

SYLLABUS BY THE COURT

1.

Where a mechanic's lien is not an available remedy, the failure to file a mechanic's lien does not bar the subcontractor from seeking recovery under another theory, such as quasi-contract.

2.

A contract implied in fact is one inferred from the facts and circumstances of the case but which is not formally or explicitly stated in words. It is the product of agreement, although it is not expressed in words. A contract implied in law does not rest on actual agreement. It is a legal fiction created by the courts to ensure justice or to prevent unjust enrichment.

3.

When the material facts are not in dispute, whether a subcontractor can recover from an owner on a quasi-contract theory is a question of law subject to unlimited review.

1

4.

In the context of a quasi-contract claim brought by a subcontractor against a property owner, the essential prerequisite for liability is the acceptance by the owner (the one sought to be charged) of benefits rendered under such circumstances as reasonably notify the owner that the one performing such services expected to be compensated therefor by the owner. In the absence of evidence that the owner misled the subcontractor to his or her detriment, or that the owner in some way induced a change of position in the subcontractor to his or her detriment, or some evidence of fraud by the owner against the subcontractor, an action for unjust enrichment does not lie against the owner by a subcontractor.

5.

On the facts of this case, a mechanic's lien was not an available remedy for a subcontractor seeking damages for expenses incurred beyond the contract price, the property owner incorrectly told the subcontractor where to perform its work (the installation of a sign at a motel), and the subcontractor relied to its detriment on the owner's representation. Accordingly, the subcontractor had a valid quasi-contract claim against the property owner for the additional expenses incurred in initially installing the sign at the wrong location.

Appeal from Saline District Court; JEROME P. HELLMER, judge. Opinion filed October 3, 2014. Affirmed.

*Nathanael Berg*, of Hampton & Royce, L.C., of Salina, for appellant.

No appearance for appellee.

Before LEBEN, P.J., PIERRON and STEGALL, JJ.

PIERRON, J.: Madan Rattan, a partner in Kaneb Investment Group, LLC (Kaneb), individually appeals the district court's judgment against him on a claim brought by Gleason & Son Signs (Gleason). Gleason was a subcontractor to Persona, a business entity that contracted with Kaneb to manufacture and install a sign on Kaneb's motel property. Rattan argues the district court erred in finding Gleason was entitled to judgment against him for expenses related to the relocation of the sign.

Rattan is a partner and one-third owner in Kaneb, which owns the Sleep Inn motel in Salina, Kansas. During the construction of the motel, Kaneb contracted with Persona to manufacture and install a sign on the motel property. Persona then subcontracted with Gleason to install the sign. Neither written contract is included in the record on appeal. According to bench trial testimony, the contract between Persona and Gleason contained provisions that stated: "'Please schedule a pre-install survey to mark out the location of the ground sign'"; and "'Invoice will not be completed without detailed completion photos and the customer signoff return[ed] to us.'"

Gary Gleason, president of Gleason, testified that his normal practice before installing a sign is to talk to the project supervisor and the property owner and come to an agreement about where the sign should be installed. He does not check site plans to verify that the agreed sign location is actually on the owner's property. In July 2008, Gary spoke to Kenny McDonald, the project supervisor for the construction of the motel, and to Rattan about where to install the sign. Rattan stated he owned all of the property between the motel and the interstate, so Gary could pick the best location. Gary and McDonald chose a spot, at which point McDonald went back to Rattan and got Rattan's approval for that location.

Gleason dug a hole and was preparing to pour concrete when an employee of the Kansas Department of Transportation (KDOT) approached and asked if Gleason was sure that the motel owned the property where the sign was being installed. Gary and

3

McDonald went back to Rattan, who stated the property was owned by a co-op and that he was the majority owner of the co-op. Gary questioned whether the sign could be installed on co-op property. Rattan ultimately told Gary to "'do whatever [he had] to do,'" so Gleason filled in the first hole and moved the sign to a new location. Gleason was paid by Persona for the work performed to install the sign at the new location. However, Gleason did not invoice Persona for expenses related to the false start at the first location. Instead, it directly sent a bill to Kaneb for $2,901.06 for those expenses, which Kaneb refused to pay. Gleason did not file a mechanic's lien.

McDonald was the job supervisor at the construction site of the motel, although he did not work for Kaneb. McDonald testified Gary approached him about where to install the sign. They chose a location and then went to Rattan for approval. Rattan gave his approval, stating he owned all the property out to the fence line along the interstate. Gleason started to install the sign at the approved location, but a KDOT employee approached Gleason and questioned whether the location was on motel property. McDonald and Gary went back to Rattan, who approved moving the sign to a new location.

Rattan also testified at the bench trial. He stated he did not have any discussion with Gary or McDonald about where the sign should be located until after it was discovered that Gleason had begun installing the sign on property not owned by Kaneb. Rattan further stated he refused to pay the invoice from Gleason because he did not have a contract with Gleason and did not ask it to do anything. Rattan contacted Persona, who informed him it had denied payment to Gleason for the work related to the false start at the first location.

In October 2010, Gleason filed an action against Rattan and Kaneb, claiming it was entitled to recover costs related to moving the sign from the first location, a location which Rattan had personally approved in his apparent capacity as owner of the motel

4

project. Rattan and Kaneb denied Rattan had approved the first location for the sign or that he had told Gleason to "do what needed to be done" to move the sign after the mistake was discovered. They also asserted that they had no privity of contract with Gleason.

The district court held a bench trial, at which the above testimony was presented. At the close of Gleason's evidence, Rattan and Kaneb moved for judgment as a matter of law. They argued that under Kansas law, a subcontractor has no privity of contract with a property owner and cannot make a claim against a property owner except by filing a mechanic's lien, which Gleason failed to do. Furthermore, if Rattan's statements could be construed as guaranteeing the payment owed by the general contractor (Persona) to the subcontractor (Gleason), then there was no written contract that met the statute of frauds.

The district court denied the motion. It found that Gleason's evidence showed Rattan, acting individually and with authority as the owner of the motel, had directed Gleason to install the sign in a location that turned out to be improper. Gleason, relying on Rattan's ownership representations and his authority to make such decisions, incurred additional expenses when it had to relocate the sign from the location that Rattan had approved. Thus, Rattan was not entitled to judgment as a matter of law.

At the close of all evidence, Rattan and Kaneb argued that if the district court were to construe Gleason's claim for payment as some kind of promissory estoppel argument, then the claim was barred by the statute of limitations. They also reiterated their argument that a subcontractor cannot make a claim against a property owner except by filing a mechanic's lien, unless the property owner has agreed to pay. Thus even if the facts were as Gleason suggested, Rattan and Kaneb could not be held liable for the extra expenses related to moving the sign because they had never agreed to pay those expenses and Gleason never filed a mechanic's lien.

5

The district court entered judgment in favor of Gleason against Rattan individually for expenses related to the false start at the first location. The district court found as a factual matter that Kaneb had contracted with Persona and Persona had subcontracted with Gleason to install the sign at the motel. Rattan stated he owned all of the property out to the interstate and personally approved the first location of the sign. Gleason then relied on those statements when it began to install the sign at the first location. After it was discovered that the first location was not motel property, Rattan authorized the relocation of the sign and directed Gleason to do the necessary work. Rattan, as an owner of the motel property who was frequently at the job site, had the ostensible authority to make such decisions. Persona was not involved in any of these discussions, and no attempt was made to modify either the contract between Kaneb and Persona or the contract between Persona and Gleason as a result of the false start. Persona did not enforce the terms of its contract with Gleason regarding the pre-install survey or customer sign-off and made payment to Gleason pursuant to the terms of the contract.

Based on these factual findings, the district court found that Rattan and Gleason had entered a new contract, apart from their original owner-subcontractor relationship, concerning the placement and relocation of the sign. As such, Rattan's defense regarding the statute of limitations and mechanic's lien requirements were inapplicable, and Gleason was entitled to judgment against Rattan for the work it performed related to the false start. Rattan timely appeals.

On appeal, Rattan argues the district court erred in granting judgment against him. He contends that under *Holiday Development Co. v. Tobin Construction Co.*, 219 Kan. 701, 549 P.2d 1376 (1976), in the absence of privity of contract Gleason's only remedy against him was to file a mechanic's lien, which it failed to do. Gleason could not circumvent the mechanic's lien statute by asserting that a new contract was created between Gleason and Rattan based on Rattan's approval of the initial location and relocation of the sign. And as a factual matter, no new contract was created because

6

Rattan received no consideration for his alleged promise to pay. Finally, Rattan asserts Gleason breached provisions of its contract with Persona that were intended to benefit Kaneb, and therefore Gleason should be precluded from circumventing this breach by bringing a claim directly against Rattan. Gleason did not file an appellate brief.

The first question we must consider is whether, pursuant to *Holiday Development* and other applicable caselaw, the only remedy available to Gleason against Rattan or Kaneb was to file a mechanic's lien. The interpretation of caselaw precedents is a question of law subject to unlimited review. *Scott v. Hughes*, 294 Kan. 403, 412, 275 P.3d 890 (2012).

In *Holiday Development*, the materialman provided rock base to a subcontractor who had contracted to build the parking lot of an office building. The subcontractor abandoned the parking lot project and failed to pay the materialman for the rock base it had furnished. The materialman then approached the general contractor, an agent of the property owner, who allegedly told him, "'Don't worry about it, you will get your money.'" 219 Kan. at 702. The general contractor ultimately hired a new subcontractor to finish the parking lot and paid $4,500 more than its contract price with the original subcontractor.

Sometime later, the materialman filed a mechanic's lien against the property owner. The property owner then filed suit against the materialman, asking for the lien to be cancelled and seeking damages from the materialman for clouding the title to its property. The materialman counterclaimed, asking for foreclosure of its lien and for a personal judgment against the property owner based on theories that: (1) it was a third-party beneficiary of the contract between the property owner (through its agent the general contractor) and the original subcontractor; and (2) the property owner (through its agent the general contractor) had agreed to pay for the materials. The district court found the mechanic's lien had been timely filed and denied the property owner's motion to

7

cancel the lien. It also entered personal judgment against the property owner in favor of the materialman, although it gave no reasons for its judgment.

On appeal, our Supreme Court first found that the mechanic's lien was not timely filed and was therefore invalid. 219 Kan. at 704-07. It then considered the validity of the personal judgment against the property owner, noting that "[a] subcontractor or materialman generally may not obtain a personal judgment against the owner in the absence of an agreement by the owner to pay. [Citations omitted.]" 219 Kan. at 707.

The materialman sought to uphold the judgment on several different bases, including the third-party beneficiary and agreement-to-pay theories raised before the district court. Our Supreme Court rejected each of these theories, finding the materialman was not a third-party beneficiary and the owner had not agreed to pay for the materials. 219 Kan. at 707-09. Finally, our Supreme Court considered whether the judgment could be upheld on a quasi-contract theory:

> "[The materialman] further says the trial court impliedly found a quasi-contract between [the property owner] and [the materialman] due to [the property owner's] unjust enrichment. . . . The theory of quasi-contract is raised by the law on the basis of justice and equity regardless of the assent of the parties. [Citation omitted.] Many courts have considered whether a subcontractor or materialman can obtain a personal judgment against an owner on the basis of quasi-contract or unjust enrichment, in the absence of privity of contract or a direct promise to pay. The overwhelming weight of authority is in the negative (see Anno., Subcontractor's Recovery Against Owner, 62 ALR 3d 288, § 4, 297-303).

> "Reasons given for the position include: (1) The mechanic's lien statute was enacted to afford the owner protection after a certain period of time from the claims of a subcontractor or materialman; if the latter did not avail himself of the statutory remedy, he should not be allowed to circumvent the statute and impose direct liability against the owner on another theory; (2) the prime contractor may already have been paid in full by

8

the owner for the improvements furnished by the subcontractor or materialman and there really is no unjust enrichment; (3) generally the owner may assume suppliers dealing with a contractor will look to him for payment of their obligations and the subcontractor or materialman may not have exhausted his possible remedies against the person to whom he originally looked for payment; and (4) defenses which may be available to the contractor as against the subcontractor or supplier may not be known or available to the owner. These appear to be sound reasons, dependent, of course, on the particular circumstances. We need not labor the matter. The defaulter here was [the subcontractor]. By reasons of the default $4,500 more was required to complete the job. There was an indication [the materialman] knew [7 months before it filed its lien] that [the subcontractor] had quit work yet it did nothing. We see no unjust enrichment in the case in support of a personal judgment." 219 Kan. at 708-09.

In *Haz-Mat Response, Inc. v. Certified Waste Services, Ltd.*, 21 Kan. App. 2d 56, 64-65, 896 P.2d 393 (1995), *aff'd in part and rev'd in part on other grounds* 259 Kan. 166, 910 P.2d 839 (1996), this court indicated that a subcontractor could not recover from a property owner on a quasi-contract theory if the subcontractor had failed to avail itself of an available statutory remedy:

"'[*A*]*part from unjust enrichment* or from any special statutory rights or remedies, a subcontractor or supplier who has furnished labor or materials for an improvement has no right to a personal judgment against one not in privity.' (Emphasis added.) *J.W. Thompson Co. v. Welles Products Corp.*, 243 Kan. 503, 511-12, 758 P.2d 738 (1988). Consequently, under certain circumstances, an action based on unjust enrichment might be actionable if there were no statutory lien available."

The *Haz-Mat Response* court noted its previous finding that the subcontractor's work in that case was not lienable under the mechanic's lien statutes, K.S.A. 60-1101 and K.S.A. 60-1103. It then considered whether the circumstances of the case would permit the subcontractor to bring a quasi-contract claim against the property owner. After applying the *Holiday Development* factors, the court determined that a quasi-contract claim was permissible. 21 Kan. App. 2d at 65.

On petition for review, our Supreme Court acknowledged but did not specifically address this court's conclusion that a subcontractor's failure to avail itself of an available mechanic's lien would preclude it from bringing a quasi-contract action against a property owner. However, our Supreme Court approved the *Holiday Development* factors for use in deciding whether a subcontractor can bring a quasi-contract claim against a property owner with whom it lacks privity. Our Supreme Court concluded that even if a quasi-contract action were permissible under the circumstances, the undisputed facts of the case showed that the property owner would not be liable under that theory and thus the subcontractor was not entitled to remand on his quasi-contract claim. *Haz-Mat Response*, 259 Kan. at 179.

Under the above caselaw, it is unclear whether our Supreme Court views a subcontractor's failure to avail itself of an available mechanic's lien as an absolute bar to a quasi-contract claim against a property owner or whether such failure is merely one factor to be considered in determining whether a subcontractor can bring a quasi-contract claim under the circumstances.

In either case, a subcontractor's failure to avail itself of a mechanic's lien only negatively impacts its quasi-contract claim against a property owner if a mechanic's lien was actually a remedy available to the subcontractor. Since Rattan does not explicitly challenge on appeal any of the district court's factual findings, the question of whether a mechanic's lien was available to Gleason under K.S.A. 60-1103 is a question of law subject to unlimited review. See *Haz-Mat Response*, 259 Kan. at 168-70.

K.S.A. 60-1103 states in relevant part:

> "(a) *Procedure*. Any supplier, subcontractor or other person furnishing labor, equipment, material or supplies, used or consumed at the site of the property subject to the lien, under an agreement with the contractor, subcontractor or owner contractor may

10

obtain a lien for the amount due in the same manner and to the same extent as the original contractor . . . ."

There is no dispute that Gleason furnished labor, equipment, material and/or supplies used at the site of the motel property or that Gleason did so under its agreement with Persona, which was a contractor of Kaneb. However, the statute further states that a lien is obtainable "for the amount due in the same manner and to the same extent as the original contractor"—in this case, whatever amount was contracted between Kaneb and Persona for the manufacture and installation of the sign. But it is clear from the facts of this case that Gleason was seeking recovery for additional expenses incurred as a result of the false start. A mechanic's lien was not an available remedy for Gleason to recover expenses beyond the contract price, expenses that were incurred as a result of its reliance on Rattan's approval of the first sign location and authorization to relocate the sign once the mistake was discovered.

Because a mechanic's lien was not an available remedy for the relief Gleason sought, its failure to file a mechanic's lien did not bar it from seeking recovery under another theory.

Rattan contends the district court erred in granting judgment against him on the theory that a "new" contract existed between himself and Gleason regarding the first placement and subsequent relocation of the sign. He argues there was no evidence he received consideration for the formation of such contract and thus no contract existed. But it appears the district court found a contract implied in law, not a contract implied in fact.

> "A contract implied in fact is one 'inferred from the facts and circumstances of the case' but which is 'not formally or explicitly stated in words.' [Citation omitted.] It is the product of agreement, although it is not expressed in words. [Citations omitted.] A contract implied in law does not rest on actual agreement. It is a legal fiction created by

11

the courts to ensure justice or to prevent unjust enrichment. [Citation omitted.]" *Smith v. Amoco Production Company*, 272 Kan. 58, 70, 31 P.3d 255 (2001).

Thus, Rattan's argument that the requisites of contract formation were not met in this case is without merit. The only issue before us is whether the district court correctly concluded that Gleason was entitled to judgment against Rattan under an equitable, quasi-contract theory.

When the material facts are not in dispute, whether a subcontractor can recover from an owner on a quasi-contract theory is a question of law subject to unlimited review. See *Haz-Mat Response*, 259 Kan. at 176.

In the context of a quasi-contract claim brought by a subcontractor against a property owner, the essential prerequisite for liability is

"the acceptance by the owner (the one sought to be charged) of benefits rendered under such circumstances as reasonably notify the owner that the one performing such services expected to be compensated therefor by the owner. In the absence of evidence that the owner misled the subcontractor to his or her detriment, or that the owner in some way induced a change of position in the subcontractor to his or her detriment, or some evidence of fraud by the owner against the subcontractor, an action for unjust enrichment does not lie against the owner by a subcontractor." 259 Kan. at 178.

See also *Minnesota Avenue, Inc. v. Automatic Packagers, Inc.*, 211 Kan. 461, 464-65, 507 P.2d 268 (1973) ("'Quasi[-]contractual obligations are generally based on unjust enrichment or benefit, but this is not universally true. There are many cases where the law enforces in a contractual action a duty to restore the plaintiff to former status—not merely to surrender the benefit which the defendant has received.'"); *The Haile Group v. City of Lenexa*, No. 102,319, 2010 WL 4977221, at *9 (Kan. App. 2010) (unpublished opinion) (stating that the terms "quasi-contract," "unjust enrichment," and "quantum

12

meruit" are used interchangeably in Kansas and a claim based on any such theory is typically considered equitable in nature), *rev. denied* 292 Kan. 969 (2011).

The undisputed facts show Rattan personally approved the first location of the sign and then authorized Gleason to relocate the sign when it was discovered the first location was not on motel property. Rattan was benefitted by this work, as the sign was ultimately placed in a proper location and presumably enhanced the visibility of the motel. Although Rattan did not benefit in the sense that he was placed in a better position than he would have been if the sign were placed correctly the first time, this type of excess benefit is not a necessary element of a quasi-contract claim. See *Minnesota Avenue*, 211 Kan. at 464-65. Furthermore, Rattan could reasonably expect under these circumstances that Gleason would seek compensation from him for this work, at least to the extent that additional expenses were incurred as a result of Rattan's mistake regarding the first location of the sign. Although there is no evidence that Rattan intentionally misled or perpetrated fraud on Gleason, it is undisputed that Gleason relied to its detriment on Rattan's incorrect information and Gleason would not have begun installing the sign at the first location but for this incorrect information.

Rattan argues that Gleason breached its contract with Persona. Since the provisions that Gleason allegedly breached—*i.e.*, the requirements for a pre-install survey and customer sign-off after the sign was installed—were meant to benefit Kaneb, it would be inequitable to allow Gleason to bring a separate claim against Kaneb or Rattan. In other words, Rattan appears to contend it was Gleason's breach of contract with Persona, not his own statements regarding where the sign could be located, that caused the additional expenses to be incurred. But the district court did not explicitly find that Gleason had breached its contract with Persona, only that Persona apparently did not enforce all the terms of the contract. Even assuming for the sake of argument that Gleason breached its contract, it is clear from the undisputed facts that the predominant cause for the improper placement of the sign was Rattan's statements regarding his

ownership of the land and his approval of the first location, not Gleason's purported failure to conduct a pre-install survey or to submit a customer sign-off to Persona after the sign was installed.

The final question for us to consider is whether recovery under this theory should be permitted under the circumstances of the case. As discussed above, a mechanic's lien was not an available remedy to Gleason, and thus the first *Holiday Development* factor is not at issue. Under the second factor, Rattan was unjustly enriched to the extent that he received the full benefit of a properly-placed sign without paying for the additional expenses incurred as a result of his own mistake regarding the first location. Under the third factor, Rattan has not suggested any remedies that Gleason could or should have pursued against Persona (the general contractor). According to Rattan's testimony, Gleason did demand payment from Persona for the additional expenses and was denied. Without a copy of the contract between Persona and Gleason included in the record on appeal, it is impossible for us to determine whether Gleason would have a viable breach of contract claim against Persona. See *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 644, 294 P.3d 287 (2013) (stating that the burden is on the party making a claim to designate a record sufficient to support that claim). For the same reason, the fourth factor is not at issue.

For the above reasons, Rattan may be held liable to Gleason under a quasi-contract theory, and the balance of the equities supports the enforcement of liability under the circumstances of the case.

Affirmed.