**WILBUR WAGGONER EQUIPMENT RENTAL AND EXCAVATING COMPANY, INC., Plaintiff-Appellant,**

v.

**Earl BUMILLER et al., Defendants-Respondents,**

**and**

**Barbara J. Osborne, Defendant-Appellant.**

**Nos. 36548 and 37235.**

Missouri Court of Appeals, St. Louis District, Division One.

Aug. 3, 1976.

Motion for Rehearing and for Transfer to Supreme Court Denied Sept. 30, 1976.

Application to Transfer Denied Nov. 8, 1976.

Bernard A. Reinert, Kenney, Leritz & Reinert, David M. Duree, St. Louis, for Wilbur Waggoner, etc.

Ernest L. Keathley, St. Louis, for Barbara J. Osborne.

Klutho & Cody, St. Louis, for Earl & Doris Bumiller.

Moser, Marsalek, Carpenter, Cleary, Jaeckel, Keaney & Brown, John S. Marsalek, St. Louis, for Maryland Cas. Co.

Virgil H. Lucas, St. Louis, for Valeska Williams.

RENDLEN, Judge.

Plaintiff Wilbur Waggoner Equipment Rental and Excavating Company, Inc. (hereinafter Waggoner) and Barbara J. Osborne, one of several defendants, separately appeal portions of the judgment in this court-tried case.

On July 17, 1969, defendant Earl Bumiller contracted to sell a parcel of land in the City of St. Louis owned by Bumiller and his wife Doris to Tractor-Trailer Supply Company, Inc., agreeing to demolish the existing building and bring the lots to street grade. Three days earlier, in anticipation of the sales agreement, Bumiller entered into a demolition contract with defendant Willard Hart, d/b/a B & B Building Materials and Hart Wrecking Company,[1] (hereinafter Hart) to raze the building for $22,280. This contract bore a signature purporting to be that of Barbara J. Osborne as a contracting party with Hart. On July 9, Hart had obtained a bond with Maryland Casualty Company (hereinafter Maryland) as surety securing performance of the proposed contract and the bond application form also bore the purported signature of Barbara J. Osborne. Later Hart contracted with Waggoner to furnish men and equipment for the work but in October of that year Hart abandoned the partially finished job and Bumiller who had paid Hart $19,675 (from which Hart had paid Waggoner only $4,000) contracted with Arch Contracting Company to complete the demolition and grading.

The following resumé of the pleadings provides a background for segregating issues and identifying relationships of the

---

1. Willard Hart was the owner and operator of B & B Building Materials and Hart Wrecking Company with Barbara J. Osborne (as found by the trial court) his partner.

parties. The suit was tried on Waggoner's second amended petition, asserting in Count I its claim for mechanic's lien against the land of Bumiller and for money judgment of $13,128.40 against all defendants individually and against Hart and Osborne, d/b/a B & B Building Materials and Hart Wrecking Company.[2] The court awarded judgment of $13,128.40 against Hart and Osborne but denied plaintiff's claims for mechanic's lien and money judgment as to the Bumillers. Waggoner's claim under Count II against Maryland (then a third-party defendant) as third-party beneficiary under the "surety bond" was denied.

Bumiller cross-claimed against Osborne and Hart, obtaining judgment for breach of contract against both in the amount of $7,300. Osborne answered, denying the contracts were "signed by this defendant [Osborne] or that it was signed by any other person under her direction, instruction or authority." The parties stipulated that Barbara J. Osborne did not sign the papers purporting to bear her signature.

By third-party petition Bumiller, seeking indemnification on the performance bond, obtained judgment against Maryland in the amount of $7,300. Maryland answered, admitting suretyship but successfully cross-claimed against Hart and Osborne as principals on the bond, holding them liable in the amount of $7,300 for the judgment on Bumiller's third-party claim. Maryland's cross-claim refers to defendants Hart and Osborne "individually and as partners d/b/a B & B Building Materials."

Hart's counter-claim charging Waggoner with negligence in razing the building was denied.[3]

## WAGGONER'S APPEAL

In its appeal Waggoner contends the court erred: (1) in finding that plaintiff was not a third-party beneficiary under Hart's performance bond; and (2) in refusing plaintiff's claim for mechanic's lien (a) because contrary to the court's finding, the evidence showed that the demolition contract was part of an overall plan to erect a new building, and (b) the court erroneously found Doris Bumiller did not authorize Earl Bumiller to act for her when executing the sales and demolition contract.

Considering Waggoner's contentions of third-party beneficiary status and right of direct action on the bond, we look to the language of the instruments. The bond binds Hart and Maryland to Bumiller in the sum of $22,280. The further operant portion provides:

> Whereas, the principal [Hart] has entered into a certain written agreement dated the 7th day of July A.D. 1969, with the owner [Bumiller] . . . for wrecking . . . which agreement is or may be attached hereto for reference. Now, therefore, the condition[4] of this obligation is such, that if the principal shall well and truly perform and carry out the covenants, terms and conditions of said agreement, this obligation to be void; otherwise to remain in full force and effect.

No express or implied obligation appears requiring Hart or Maryland to pay for labor or materials provided by others. However the demolition contract,[5] incorporated by reference, provides that Hart "wreck" the building, obtain permits, certificates of in-

---

2. Except as otherwise noted, pleadings directed to Barbara J. Osborne and Willard Hart name them individually and d/b/a B & B Building Materials and Hart Wrecking Company.

3. Willard Hart died October 20, 1974, and Valeska H. Williams as administratrix was submitted in his stead for all actions herein.

4. "Words of 'condition' are not words of 'promise' in form; but in the case of penal bond they must be construed to be words of promise, inasmuch as the only express words of promise are those in which payment of the penal sum is promised." *LaSalle Iron Works, Inc. v. Largen,* 410 S.W.2d 87, 91 (Mo. banc 1966).

5. Relevant portions of the entire contract with emphasis added are as follows:

> "It is hereby agreed by and between WILLARD HART and BARBARA J. OSBORNE, doing business as the B & B BUILDING MATERIALS and the HART WRECKING COMPANY, parties of the first part, and EARL BUMILLER, owner of property . . . in the City of St. Louis, Missouri, party of the second part, that the parties of the first part *will wreck the*

surance including workmen's compensation and a completion bond. Further Bumiller was to advance $2,000 at signing and thereafter make progress payments as the work advanced—

> [U]pon the presentation of the parties of the first part [Hart] of their *expenses* provided that receipts will be furnished for all the *monies previously outlayed.* (Emphasis added.)

Waggoner contends this quoted portion of the contract constitutes an implied promise to pay all laborers and materialmen, providing it (Waggoner) a direct right of action on the bond under the holding in *LaSalle Iron Works, Inc. v. Largen,* 410 S.W.2d 87, 92 (Mo. banc 1966). We do not agree.

■ The bond was executed to Bumiller as sole obligee, conditioned on Hart's performance of the contract. Before a third party, furnishing labor or material but not named in the bond or contract nor privy to the consideration, may sue thereon, it must be found the bond was entered into for his benefit. The intention to benefit the "third-party" laborer or materialman may be found if, as found in *LaSalle, supra* at 89, the bond is conditioned "that the contractor shall pay all claims for labor and materials, or that he shall pay laborers and materialmen." Explaining its holding, the

court in *LaSalle, supra* at 90, citing 77 A.L.R., l.c. 31, stated:

> [I]f there is an actual promise by the obligors to pay the third party, either by express words or by reasonable implication, there is no need to speculate for whose benefit the undertaking [bond] was made. Of course, the question of intention to benefit cannot be eliminated altogether in considering the rights of third parties, since in many cases the promise for their benefit is not clearly expressed and the meaning of the instrument is doubtful.

There the bond was conditioned that the principal should reimburse and pay the obligee for all outlays and expenses incurred in making good any default of the principal and further that the principal—

> [S]hall pay all persons who have contracts directly with the Principal for labor or materials, . . . *Supra* at 88. (Emphasis added.)

This was construed as evidence of intent to confer a right of action upon materialmen and laborers against the surety and imposed "upon the surety the duty to pay them, . . . In so far as an intent of the parties may be necessary, such intent was shown by this wording of the bond itself, there being nothing in the bond to create an ambiguity, and nothing in the facts or cir-

*entire building* improvements on the said premises subject to the following stipulations and agreements:

(1) All salvage . . .

(2) Party of the first part will haul away all rubbish and debris and leave the job finished and graded to a ground level with the adjacent streets and property, and all water taps will be destroyed and all other utility hazards will be handled in accordance with City specifications. The said parties of the first part will obtain all the permits for this work as required by the City authorities and ordinances.

(3) The parties of the first part will furnish a completion bond to the party of the second part in the amount of Twenty-Two Thousand Two Hundred Eighty Dollars ($22,280.00).

(4) The parties of the first part will furnish a Certificate of Public Liability Insurance . . Public Liability, and a property damage insurance certificate . . . and will also furnish Certificate of Workmen's Compensation Insurance.

(5) Should the two billboards . . .

(6) The party of the second part *will pay* the parties of the first part Twenty-Two Thousand Two Hundred Eighty Dollars ($22,280.00) *for the completion of this work* to be paid as follows:

Two Thousand Dollars ($2,000.00) to be advanced at the time this agreement is signed for the necessary building permits. Thereafter party of the second part will pay additional sums as the work progresses upon the presentation of the parties of the first part of their *expenses* provided that receipts will be furnished for all the *monies previously outlayed. It is understood that in no instance will payments exceed the Twenty-Two Thousand Two Hundred Eighty Dollars ($22,280.00) as the contract price for the completed job.*

IN WITNESS WHEREOF the parties have hereunto affixed their hands and seals this 14th day of July, 1969.

/s/_____WILLARD HART
/s/_____BARBARA J. OSBORNE
/s/_____EARL BUMILLER"

cumstances to the contrary." *LaSalle, supra* at 92. In *Ill-Mo Contractors, Inc. v. Aalcan Demolition and Contracting Co.,* 431 S.W.2d 165, 168[4] (Mo.1968), the court deciding a similar point under Kentucky law held a performance bond, incorporating a building contract requiring the contractor to "furnish and *pay for all labor, and materials,* machinery and equipment used in performing the contracts" (emphasis added), was for the benefit of materialmen bringing it within the class of cases entitling materialmen to maintain actions directly against the surety. The court distinguished the case before it from those in which the bond is "solely to secure performance of the contract, and contains no language from which an express obligation to pay third parties for materials may be derived, [in such cases] an action thereon by materialmen may not be maintained." *Ill-Mo, supra* at 167[2]. The court, referring to *LaSalle,* characterized that bond as one which "clearly evidenced an intent to confer a right of action upon a materialman against a surety." *Ill-Mo, supra* at 168[4].

■ In the case at bar we find no express or implied condition for Hart or Maryland to pay laborers or materialmen, manifesting an "intent to benefit" them. The contract makes no reference to *payment* by Hart to anyone in any amount, though Waggoner insists the instrument be otherwise construed. Seeking the fair intendment of the terms, we find no rule of strict construction as to the principal or surety in the context here.

The contract called for $22,280 "for completion of the work," and it was a finished job which entitled Hart to $22,280. Though he could ask for payments "as work progresses" the contract stated and reiterated that notwithstanding "any expenses" of Hart,[6] or "money previously outlayed" by him, "in no instance will payments exceed the $22,280 as the contract for the completed job." Since Bumiller's obligation to pay was conditioned upon the finished work and in no event more than $22,280, it is clear

that Hart could, on completion, demand and receive the full consideration without paying Waggoner or tendering Bumiller receipts of any kind.

The contract also permits Hart at his option to request and receive progress payments upon "presentation" of "their[7] expenses." The term "expenses" broadly includes labor and material which Hart himself provided by his own effort and from his inventory of materials. On presentation of a statement of account for those items of "expenses," Hart could demand and receive progress payments. Indeed he did just that, collecting more than $19,000 and paying only $4,000 therefrom to Waggoner, and we are not informed if Hart presented receipts for the $4,000. We cannot construe this language to mean that Hart is thereby required "to pay third parties." As to labor and material obtained by Hart from Waggoner or others, these items were also "expenses," and if Hart had paid therefor, by "monies previously outlayed," receipts were to be furnished. Though this contract provision was less than artfully drawn, it cannot be strained to impose a requirement that Hart pay subcontractors and be equated to the language in *LaSalle* that the principal "shall pay all persons who have contracts directly with the Principal" or the language of *Ill-Mo* that the principal would "furnish and pay for all labor, materials, machinery and equipment used in performing the contracts."

Waggoner suggests the language shows an intent to pay laborers and materialmen to avoid the possibility of mechanic's liens. However as we shall see *infra,* the nature of the work under the contract was not lienable, negating that argument. Seeking the purpose for the inclusion of the requirement that "receipts will be furnished for all monies previously outlayed," it could be argued this arrangement provided Bumiller a means of determining the status of the work and to assist in determining the amount of progress payments which might

---

6. Our reference here to Hart includes all second parties named in the contract.

7. The contract term "their" refers to Hart, Osborne and the named partnerships.

be claimed from time to time by Hart.[8] Though it must be conceded the intent of the contracting parties is somewhat obscure, we cannot conclude as a matter of law that a third-party beneficiary status for materialmen and laborers was intended. While nothing heretofore said diminishes Hart's and Osborne's legal obligation to pay laborers and materialmen under their separate employment agreements, the *mere existence* of this legal duty is not enough to transmute the bond to "third-party" beneficiaries contract.

Finally Waggoner argues that to avoid obligations to materialmen and laborers the surety must expressly exclude liability to them in the bond, referring to dictum from *LaSalle, supra* at 91, wherein the court, discussing a hypothetical situation stated:

If the surety wishes to exclude this type of liability it may consider such a bond as is shown in *Bourrett v. W. M. Bride Construction Company,* 248 Iowa 1080, 84 N.W.2d 4, where all rights of action by any one except the named obligee in the bond were expressly excluded.

The cited language suggests sureties may wish to consider use of such terms, but neither *LaSalle* nor the later *Ill-Mo* impose the requirement of express exclusion provisions in the bond to avoid such liability by the surety. Appellant's first point is denied.

■ Waggoner next contends the trial court erred denying its claim for mechanic's lien as the evidence disclosed the plan to raze the existing structure was more than a contract for demolition, arguing it was instead part of an overall scheme to erect a new building. When the work was performed the applicable statute, § 429.010,

RSMo.1969, V.A.M.S., in pertinent part provided a right of lien on the land or improvements of any owner for:

Every—. . . person, who shall . . perform any . . . labor upon, or furnish any material, . . . for any building, erection or improvements upon land, or for repairing the same, under . . . any contract with the owner or . . . his . . . contractor . . .[9]

It has long been held that the lien law should be liberally construed to the end of advancing its remedial purpose. *Ladue Contracting Co. v. Land Development Co.,* 337 S.W.2d 578, 584[5] (Mo.App.1960). However, "the statute does not go so far as to authorize a lien on the real estate to which it is attached for the mere wrecking and removal of a building. We may go further and say that the statute gives no lien on the real estate in any case except as correlative to a lien on a building, erection or improvement, and then upon the theory that the building, erection or improvement has been a benefit to the realty and enhanced its value." *Arthur Morgan Trucking Co. v. Shartzer,* 237 Mo.App. 535, 174 S.W.2d 226, 227[1, 2] (1943). In that case the court found removal of an old building from the defendant's property was part of an indivisible contract for the improvement of the owner's and lessee's property including the erection of a new building. The lien attached because "[the] work was a part and parcel of the whole scheme involved in the erection of a new building, and *was within the contemplation of both the owner and lessees, on the one part, and the contractor, on the other part, and expressly provided for in their contract.*" *Shartzer, supra* at 227–8. (Emphasis added.) Holding further that this would be true though such work be done or ordered

---

8. On one occasion Bumiller wrote Hart a check requiring him to endorse it to Waggoner, who argues this shows an intent of the parties that subcontractors must be paid from the progress payments. The language of the contract expresses no such intent of the parties. Further the single isolated incident, itself ambiguous, does not mandate the conclusion suggested by appellant nor change the result.

9. The law of 1971, p. 424, § 429.015, added provisions granting liens to persons performing work or furnishing materials "for the purpose of demolishing or razing a building or structure . . . ." This statutory change gives a lien remedy usually denied laborers and materialmen under demolition contracts.

at different times. The court concluded the controlling question is—

> Was it a part of the owner's scheme and plan to proceed without interruption or delay and as one project with the erection of a new building? If that was the intention . . . the claim is . . . a lienable one. . . . On the other hand, work or labor performed for the sole purpose of wrecking and removing an old building, *with no definite and formed plan or intention of proceeding without delay or interruption* with a new building . . . would not constitute a lienable claim. *Shartzer, supra* at 228[3]. (Emphasis added.)

Bumiller entered the contract to raze the building and level the lot as a condition of sale. The sale contract to the Tractor-Trailer Supply Company, Inc., containing that condition in no way suggests an intention of the owner to then or at any time thereafter make improvements on the land. H. Peter Bly, an officer of the Tractor-Trailer Supply Company, Inc., called by Waggoner, testified his company contracted to purchase the land intending to build on the land by extending their present building from the adjoining lot and to do so when the purchase was completed. However, he testified these were "verbal plans" and that the matter had been discussed with architects but he was unsure if a contractor had been contacted at that time. In effect, Waggoner now urges the intent of a prospective purchaser be imputed to the owner and a finding that the contract for demolition was in fact an integral part of plans for constructing improvements on the land. The only evidence was a contract for sale requiring the seller to demolish an existing building and a present, though not clearly formed nor communicated, intention of the buyer to separately contract in the future for erection of a building. We believe the trial court was correct in not finding there was a fully-formed and integral plan as contemplated in *Arthur Morgan Trucking Co. v. Shartzer, supra.*

*Vasques v. Village Center, Inc.*, 362 S.W.2d 588, 593–4[9] (Mo.1962) cited by appellant, involved a successful mechanic's lien claim for excavating and grading in connection with construction of home sites and commercial property. The work was done in accordance with specification, with stakes and prescribed elevation under an overall plan for the development of the tract. The case is distinguishable as there we find a fully-formed and integral plan to erect a group of buildings on the site, and thus a lienable claim. For the same reason we distinguish *Ladue Contracting Co. v. Land Development Co., supra,* in which this court found that grading and paving a street in a subdivision-building project was lienable work under the statute. Again it was the fully-formed integral plan for erection of improvements on the land which differentiates *Ladue* from the case at bar. Waggoner's second point must be denied, rendering moot his third contention pertaining to the trial court's additional reason for denying the lien. The judgment as to appellant Wilbur Waggoner Equipment is affirmed.

## OSBORNE'S APPEAL

Barbara J. Osborne appeals from the judgments of Bumiller and Maryland alleging: (1) insufficiency of proof of partnership, and (2) forgery with respect to the contract and bond application. As previously noted, the parties stipulated that Barbara J. Osborne did not sign the papers purporting to bear her signature and from this she contends neither the contract nor bond obligated her. The purported signature of Osborne and the established signature of Willard Hart appear on both documents as representatives of a single promisor. If in fact they were partners and if either signed the documents, both were obligated under the contract. See *Deichmann v. Aronoff*, 296 S.W.2d 171, 178[2] (Mo.App. 1956). The want of Osborne's signature or its presence as a forgery is not controlling.

The court found as a fact and conclusion of law that "that defendant Willard Hart d/b/a B & B Building Materials and Hart Wrecking Company and defendant Barbara J. Osborne were at all pertinent times here-

in mentioned partners in these enterprises." Osborne contends there was no evidence adduced supporting the finding and we note the court did not state the basis for its conclusion. Maryland on the other hand argues there was no contested issue of partnership because Osborne failed to specifically deny its existence as alleged in the pleadings. Rule 55.13, V.A.M.R., provides:

> It shall be sufficient to aver the ultimate fact of the capacity of a party to . . . be sued . . . *or the legal existence of . . . an organized association of persons that is made a party.* When a person desires to *raise an issue as to the legal existence of any party or the capacity of any party to . . . be sued or the authority of a party to . . . be sued in a representative capacity, he shall do so by specific negative averment,* which shall include such supporting particulars as are peculiarly within the pleader's knowledge. When a party so raises such issue, the burden of proof thereon shall be placed upon the opposite party. (Emphasis added.)

Rule 55.14 (formerly 55.16) derived from § 509.150, RSMo.1969, provides specifically in the case of partnership that:

> When parties sue or are sued as a partnership, *and the names* of the partners are set forth in the *petition* or *counterclaim,* the existence of the partnership shall be deemed confessed unless it be denied by specific negative averment, which *shall* include such supporting particulars as are peculiarly within the pleader's knowledge. (Emphasis added.)

Appellant Osborne does not dispute that she failed to deny by specific negative averment the fact of partnership but argues that Waggoner's petition did not sufficiently plead partnership to bring Rule 55.14 into operation. Further that the allegations of partnership in Maryland's and Bumiller's cross-claims may be met by simple denial because the Rule (55.14) specifies only petitions and counter-claims, excluding all other forms of pleading from the requirement of "specific negative averment." For reasons hereafter discussed, we hold otherwise.

■■ Waggoner's several amended petitions referred to Osborne in the following fashion. "Barbara J. Osborne, individually and d/b/a the B & B Building Materials and the Hart Wrecking Company and Willard Hart, individually and d/b/a the B & B Building Materials and the Hart Wrecking Company," and also as "defendants Willard Hart and Barbara J. Osborne, doing business as the B & B Building Materials and the Hart Wrecking Company." Bumiller's cross-claim referred to "defendants Barbara Osborne and Willard Hart, individually and doing business as B & B Building Materials and Hart Wrecking Company." In the original and amended cross-claim of third-party defendant Maryland Casualty Company, against Osborne, it is alleged "defendants Hart and Osborne, individually and *as partners* doing business as B & B Building Materials, agreed to indemnify cross-claimant on the bond." (Emphasis added.) It is the purpose of Rule 55.14 to save parties the difficult and often expensive process of proving the existence of a partnership when that issue is not contested. This purpose extends equally to cross-claims and third-party claims as to original petitions and counter-claims. The cases cited by Osborne [10] are to the effect that where the General Assembly specifically enumerates things or areas to be covered by a statute (in this case a Supreme Court Rule) it implicitly rejects areas or things not so listed, under the general rule of construction "expressio unius est exclusio alterius." However, this general principle of construction does not control where the logic of the Rule extends to all forms of pleadings and the language does not clearly exclude any. We conclude Rule 55.14 does apply to allegations of Maryland's and Bumiller's cross-

---

**10.** *Giloti v. Hamm-Singer Corp.,* 396 S.W.2d 711, 713 (Mo.1965); *Parvey v. Humane Society of Missouri,* 343 S.W.2d 678, 681 (Mo.App. 1961); *State ex rel. Wright v. Carter,* 319 S.W.2d 596 (Mo.banc 1958); *Mack Motor*

*Truck Corp. v. Wolfe,* 303 S.W. 697 (Mo. App.1957). These cases deal primarily with the construction of penal statutes. None has application to a rule of pleading.

**40**

claim and the clear allegation of partnership in Maryland's pleadings to which no specific denial was made, becomes proof in the case, available for all purposes since, as a general rule, "[a]n admission on the pleadings is an admission for all the purposes of the cause." 71 C.J.S. Pleadings § 160, p. 335, sufficient to support the trial court's finding and conclusion.

The court's finding and conclusion are also justified because Waggoner's petition and Bumiller's cross-claim, though not containing the word "partnership" adequately pleaded the fact.

"The general rule is that . . . where persons are sued as partners, the complaint should allege the fact of their partnership. Such allegation in the form authorized by statute is sufficient, and *generally speaking it need not follow any set form of words.* It has been held that an allegation will be treated as alleging *by implication* every fact which can be implied from its averments by the most liberal intendment." (Emphasis added.) 68 C.J.S. Partnership § 221, pp. 708–709. "In actions against a partnership, the general rule is that it is sufficient to designate the names of the parties, and it is unnecessary to allege the existence of a partnership . . ." 60 Am.Jur.2d Partnership, § 333, p. 223.

In *Hatton v. Sidman,* 169 S.W.2d 91, 99[10] (Mo.App.1943), one defendant challenged the sufficiency of the evidence to prove partnership. The issue turned on whether partnership had been properly raised in plaintiff's petition and if so specifically denied by this defendant. The court examined the allegation of partnership concluding it *was* sufficiently stated: "This suit, as instituted, shows that defendants Edward Sidman and Halo Mae Sidman were jointly sued as *individuals doing business as Sidman & Son.* In other words, they were sued as partners . . . [citing *Mehlstaub v. Michael,* 221 Mo.App. 807, 287 S.W. 1079 in which] . . . it was held that a petition which stated that the defendants therein operated the business *as a firm* was a sufficient allegation that the defendants were operating the business as a partnership." (Emphasis added.) Because defendants had not put the fact of such partnership in issue by proper pleading, the fact of partnership was deemed admitted.

Appellant Osborne for her final point contends she was not liable "because the forgery of her name on those two documents by defendant Willard Hart (if he did commit the forgery) was a willful, wanton and malicious tort and a criminal act which relieved her of liability as a partner of defendant Hart." This contention is without merit. Osborne and Hart were partners, thus her liability under the contracts remained whether signed by her or not. *Deichman v. Aronoff, supra,* and no tort or criminal act has been committed that would relieve her of such liability. The cases cited by appellant involve torts committed by a partner clearly outside the scope of the partnership business and are inapposite here. Appellant's final point is denied.

The judgment is affirmed as to all parties.

WEIER, P. J., and McMILLIAN, J., concur.