(896 P.2d 393)
No. 72,004

HAZ-MAT RESPONSE, INC., *Appellant*, v. CERTIFIED WASTE SERVICES LIMITED, CHIEF SUPPLY CORPORATION, COASTAL REFINING & MARKETING, INC., and CIC INDUSTRIES, *Appellees*.

Opinion filed
May 19, 1995.

*Robert M. Thompson,* of Bryan Cave, of Kansas City, Missouri, for appellant.

*Stephen M. Kerwick* and *Darrell L. Warta,* of Foulston & Siefkin, of Wichita, for appellees Coastal Refining & Marketing, Inc., and CIC Industries.

Before PIERRON, P.J., RULON, J., and STEVEN R. BECKER, District Judge, assigned.

RULON, J.: Haz-Mat Response, Inc., plaintiff, appeals the district court's granting of summary judgment to Coastal Refining & Marketing, Inc., defendant. Specifically, plaintiff claims the court erred in finding that removal of hazardous waste would not support a mechanic's lien and that a subcontractor could not recover from the owner of a property absent privity of contract. We affirm in part, reverse in part, and remand the cause for further proceedings.

The facts of this case are not in dispute and are as follows:

This case involves the removal of industrial waste from a refinery owned by defendant. Defendant contracted with Certified Waste Services Limited (Certified) and Chief Supply Corporation (Chief) to remove, load, transport, and dispose of up to 500,000 pounds of industrial waste. The waste was located in two above-ground emulsion tanks, an API separator, and an in-ground tank at defendant's refinery in El Dorado, Kansas. Certified and Chief subcontracted part of the work to plaintiff. Plaintiff worked at the site for about one month and removed in excess of 500,000 pounds of refinery waste.

Problems arose during performance of the contract, and defendant subsequently hired other parties to perform some of the work which Certified, Chief, and plaintiff had originally contracted to perform. Defendant later refused to pay Certified and Chief, who in turn refused to pay plaintiff. Certified, as we understand, has filed for bankruptcy. Plaintiff claims it completed its portion of the contract and denies defendant's claim that it had to hire others to finish work which was plaintiff's responsibility.

Plaintiff filed a mechanic's lien and subsequently filed suit against defendant, claiming breach of contract. Additionally, plain-

tiff sought to foreclose on the lien and, in the alternative, sought to recover on the theory of quantum meruit and unjust enrichment. Defendant filed a motion for summary judgment, claiming plaintiff's work would not support a mechanic's lien and further claiming plaintiff could not recover under quantum meruit because there was no privity of contract between defendant and plaintiff. Eventually, the district court granted defendant's motion for summary judgment, and now plaintiff appeals.

## THE MECHANIC'S LIEN

Summary judgment is proper when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Mark Twain Kansas City Bank v. Kroh Bros. Dev. Co.*, 14 Kan. App. 2d 714, 717, 798 P.2d 511, *rev. denied* 248 Kan. 996 (1990). This question involves the interpretation of K.S.A. 60-1101 and is thus a question of law. An appellate court's scope of review on questions of law is unlimited. *State v. Heffelman*, 256 Kan. 384, 386, 886 P.2d 823 (1994).

K.S.A. 60-1101 reads, in relevant part:

"Any person furnishing labor, equipment, material, or supplies used or consumed for the improvement of real property, under a contract with the owner or with the trustee, agent or spouse of the owner, shall have a lien upon the property for the labor, equipment, material or supplies furnished, and for the cost of transporting the same."

K.S.A. 60-1103 provides that any supplier, subcontractor, or other person who furnishes labor, equipment, material, or supplies used or consumed at the site of the property subject to the lien, under an agreement with the contractor, subcontractor, or owner-contractor, may obtain a lien for the amount due in the same manner and to the same extent as the contractor.

The parties do not dispute that plaintiff was a subcontractor and provided labor and equipment to accomplish removal of refinery waste at defendant's facility. The question for us is whether the services and materials used in the removal of hazardous material by plaintiff were used for *the improvement of real property*. This is a matter of first impression in Kansas.

"[Because] mechanics' liens are statutory liens, they can only be acquired in the manner and on the condition prescribed in the statute. *General Air Conditioning Corp. v. Stuewe*, 156 Kan. 182, Syl. ¶ 2, 131 P.2d 638 (1942). Those claiming a mechanic's lien have the burden of bringing themselves clearly within the provisions of the statute. *Letz Plumbing Co. v. Fee*, 235 Kan. 266, 274, 679 P.2d 736 (1984). While courts give liberal construction to statutory provisions once a mechanic's lien has attached (*Lewis v. Wanamaker Baptist Church*, 10 Kan. App. 2d 99, 100, 692 P.2d 397 [1984]), strict construction in the absence of equitable considerations is the rule when deciding whether a lien attaches (*Goodyear Tire & Rubber Company v. Jones*, 317 F. Supp. 1285, 1289 [D. Kan. 1968], *aff'd* 433 F.2d 629 [10th Cir. 1970])." *Mark Twain*, 14 Kan. App. 2d 718-19.

In *Mark Twain*, this court concluded that providing architectural and engineering services was not lienable where no construction was ever commenced and there was no visible or physical manifestation of the architect's or the engineer's work on the property. We stated that the term "improvement" had generally been defined as "any physical addition made to real property that enhances the value of the land." 14 Kan. App. 2d at 720. The *Mark Twain* court concluded that "[s]ome visible improvement must be made in order to put those who seek to acquire an interest in the land on notice that building has commenced on the property." 14 Kan. App. 2d at 721.

Plaintiff now argues the facts of this case are distinguishable from those in *Mark Twain* because the work done by plaintiff was on-site and in plain view, putting the world on notice of the rights of those who furnished labor and materials.

Even though plaintiff did provide labor and materials to the job site, that alone does not satisfy the plain wording of our mechanic's lien statute. Our Supreme Court has held that materials and labor must be used for the improvement of property and thus become a part of the realty before a mechanic's lien can attach. *Benner-Williams, Inc. v. Romine*, 200 Kan. 483, 485, 437 P.2d 312 (1968). However, this does not limit mechanics' liens to the actual construction of structures upon real property. In *Southwestern Electrical Co. v. Hughes*, 139 Kan. 89, 93, 30 P.2d 114 (1934), the court concluded that the fill dirt and grading were necessary elements of the construction of a house and were consequently lienable. Our Supreme Court has also concluded that remodeling work on a

home constitutes an improvement. *Benner-Williams*, 200 Kan. at 487. Heavy machinery has been held to give rise to a mechanic's lien where the machine has been bolted to the concrete foundation. *Geppelt v. Stone Co.*, 94 Kan. 560, Syl. ¶ 1, 146 Pac. 1157 (1915).

The intrinsic concept in all of the above cases is that something has been added to the value of the real property. However, an actual increase in the value of the property is not required. 53 Am. Jur. 2d, Mechanics' Liens § 2, p. 517. "It is not the contract which creates a mechanic's lien, but it is the use of the materials furnished and the work and labor expended by the contractor that give the materialman and laborer their liens under the statute. The right is not dependent upon a breach of contract or upon whether the work has increased the value of the property." 53 Am. Jur. 2d, Mechanics' Liens § 49, p. 563. Improvement could mean the erection of a building or, conceptually, landscaping or grading.

Here, plaintiff was hired to remove hazardous waste. However, this work was not accomplished as a part of any construction, improvement, or renovation project, but apparently as part of defendant's regularly required maintenance.

We understand there is authority to suggest that if plaintiff's efforts were part of a larger project to clean up the site in order to construct a building or other facilities, a mechanic's lien might be available. Annot., 74 A.L.R.3d 402. However, the jurisdictions that have considered this issue are not uniform in their holdings and tend to be governed by a variety of differently worded statutes. See *Logan-Moore Lumber Co. v. Black*, 185 Kan. 644, 654, 347 P.2d 438 (1959).

In *Wilbur Waggoner Equipment Rental v. Bumiller*, 542 S.W.2d 32 (Mo. App. 1976), the court held that the demolition of a building, which was not part of a fully formed and integral plan to construct a new building, was not lienable. The court distinguished earlier decisions in that jurisdiction which held that excavating and grading in connection with new home construction was lienable and grading and paving in a subdivision building project was also lienable work. The distinction was that if the work was accomplished as a part of a fully formed integral plan for the erection of

improvements on land, the work was lienable. If the work was separate and distinct and not directly part of a construction project, the work was not lienable. 542 S.W.2d at 38. The Missouri lien statute at issue provided a lien for work or materials for "any building, erection or improvements upon land." 542 S.W.2d at 37.

"The mechanic's lien statutes were enacted as a policy measure to encourage artisans in the building trade at a time when there existed a critical need for new construction in the young country." Their purpose is to afford effective security to the persons designated by statute who have done things or acts as described by statute, usually contractors or materialmen, who furnish labor or materials in the improvement of property of others. 53 Am. Jur. 2d, Mechanics' Liens § 6, pp. 520-21. The term improvement is commonly defined as: "A valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes." Black's Law Dictionary 757 (6th ed. 1990).

In *Mazel v. Bain*, 272 Ala. 640, 133 So. 2d 44 (1961), the court held that the clearing and grading of land was the type of improvement lienable under the Alabama code. The court rejected the argument that work on land in the absence of an improvement or building thereon would not be lienable. The court commented: "Under such an interpretation, a brick mason who built the foundation for a building, which was never built, would not have a lien." Similarly, "the digging of a well would not be an improvement, but the adding of a well curb or a shelter over the well would be subject to the lien because it was added to the improvement (the well) which was already there." 272 Ala. at 643.

Under the facts shown here, plaintiff's removal of hazardous material was not lienable, not because such removal did not encompass the construction of a structure, but because it was part of a maintenance programthat was necessary in the normal course of defendant's business. The removal of the waste did not become a part of the property or enhance the value of the real estate because defendant would generate more waste to take its place. However,

there is arguably no reason that removal of hazardous waste, conducted as part of a project to construct a structure, or improve property for some other purpose, would not be lienable. The controlling factor is that such removal must be part of a plan to improve the real property. Accordingly, we conclude the decision of the district court was correct, in part, even if for the wrong reason. See *Prairie State Bank v. Hoefgen*, 245 Kan. 236, 245, 777 P.2d 811 (1989).

## QUANTUM MERUIT

Plaintiff next argues that if the work was not lienable, plaintiff should be permitted to pursue a claim against defendant on the theory of quantum meruit or unjust enrichment.The district court ruled that a subcontractor or materialman could not obtain a personal judgment against an owner on the basis of unjust enrichment in the absence of privity of contract or a direct promise to pay.

We believe that whether a subcontractor can recover from an owner on the basis of unjust enrichment or quantum meruit, when the work is such that it is not lienable pursuant to a mechanic's lien statute, is a question of law. As such, this court's scope of review is unlimited. See *Heffelman*, 256 Kan. at 386.

"Quantum meruit is an equitable doctrine. 'Restitution and unjust enrichment are modern designations for the older doctrine of quasi-contracts.' *Peterson v. Midland Nat'l Bank*, 242 Kan. 266, 275, 747 P.2d 159 (1987). 'The theory of quasi-contract is raised by the law on the basis of justice and equity regardless of the assent of the parties.' *Holiday Development Co. v. Tobin Construction Co.*, 219 Kan. 701, 708, 549 P.2d 1376 (1976). 'The substance of an action for unjust enrichment lies in a promise implied in law that one will restore to the person entitled thereto that which in equity and good conscience belongs to him [or her].' *Peterson*, 242 Kan. at 275." *Pioneer Operations Co. v. Brandeberry*, 14 Kan. App. 2d 289, 299, 789 P.2d 1182 (1990).

The district court, here, granted summary judgment to defendant based on language found in *Holiday Development Co. v. Tobin Construction Co.*, 219 Kan. 701, 549 P.2d 1376 (1976). In *Holiday*, a materialman, Tobin, sought to recover for rock provided for the construction of a parking lot. After the subcontractor who was to build the parking lot abandoned the project, Tobin filed a

mechanic's lien. Holiday filed suit asking that the lien be canceled. Tobin's answer contained a three-part counterclaim seeking, among other things, to foreclose on the lien and seeking a personal judgment against Holiday. 219 Kan. at 703.

Holiday claimed that Tobin's lien had not been timely filed and was therefore invalid. The district court disagreed, denied Holiday's petition to cancel the lien, and entered judgment in favor of Tobin. On appeal, our Supreme Court reversed the district court and held that the lien was not timely filed. 219 Kan. at 706-07. The *Holiday* court further reversed the personal judgment, concluding there was no evidence of unjust enrichment. The *Holiday* court stated that the majority of jurisdictions had ruled that a subcontractor or materialman could not obtain a personal judgment against an owner on the basis of quasi-contract or unjust enrichment in the absence of privity of contract or a direct promise to pay. The district court here relied upon such language in granting defendant's motion for summary judgment. However, the *Holiday* court further said:

"Reasons given for the position [that recovery cannot be had absent privity of contract or a promise to pay] include: (1) The mechanic's lien statute was enacted to afford the owner protection after a certain period of time from the claims of a subcontractor or materialman; if the latter did not avail himself of the statutory remedy, he should not be allowed to circumvent the statute and impose direct liability against the owner on another theory; (2) the prime contractor may already have been paid in full by the owner for the improvements furnished by the subcontractor or materialman and there really is no unjust enrichment; (3) generally the owner may assume suppliers dealing with a contractor will look to him for payment of their obligations and the subcontractor or materialman may not have exhausted his possible remedies against the person to whom he originally looked for payment; and (4) defenses which may be available to the contractor as against the subcontractor or supplier may not be known or available to the owner." 219 Kan. at 708-09.

As we understand, the *Holiday* court reasoned that because Tobin delayed in filing its mechanic's lien, through no fault of Holiday, there was no evidence of unjust enrichment. 219 Kan. at 709.

"[A]*part from unjust enrichment* or from any special statutory rights and remedies, a subcontractor or supplier who has furnished labor or materials for an improvement has no right to a personal

judgment against one not in privity." (Emphasis added.) *J.W. Thompson Co. v. Welles Products Corp.*, 243 Kan. 503, 511-12, 758 P.2d 738 (1988). Consequently, under certain circumstances, an action based on unjust enrichment might be actionable if there were no statutory lien available. Both the district court, here, and the *Holiday* court cite Annot., Subcontractor's Recovery Against Owner, 62 A.L.R.3d 288, § 4, pp. 297-303, which deals exclusively with subcontractors who have made improvements to real property, thus causing the work to be lienable under the applicable statutes. Such is not the factual situation here.

Under the facts shown here, because plaintiff's removal work is not lienable under K.S.A. 60-1101 and K.S.A. 60-1103, an action based on unjust enrichment may be sought because: (1) plaintiff could not avail itself of any mechanic's lien statute, and thus an action in equity might be plaintiff's only available avenue; (2) as we understand, there is disputed evidence as to whether the prime contractors, Certified and Chief, have been paid; (3) the record shows plaintiff has pursued legal action against the contractor, who has apparently declared bankruptcy; and (4) the only defense espoused by the defendant is failure of performance; therefore there are no defenses available to the prime contractors which are unknown to defendant. Further, Certified listed the amount owed plaintiff as fixed and liquidated in its bankruptcy filing, thus suggesting it does not contest plaintiff's claim or performance.

As stated above, quantum meruit is an equitable action based on a contract implied in law that is not dependent on the assent of the parties. The basic elements are: (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge of the benefit by the defendant; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value. *J.W. Thompson Co.*, 243 Kan. at 512.

"For a quasi-contract neither promise nor privity, real or imagined, is necessary. . . . Where a case shows that it is the duty of the defendant to pay, the law imputes to him [or her] a promise to fulfill that obligation. The duty, which thus forms the foundation of a quasi-contractual obligation, is frequently based on the

doctrine of unjust enrichment." 66 Am. Jur. 2d, Restitution and Implied Contracts § 2, pp. 943-44.

We affirm the district court's granting of summary judgment to defendant on the ground that plaintiff's removal work was not lienable under K.S.A. 60-1101 and reverse and remand the cause for consideration of plaintiff's quantum meruit claim.