NOT DESIGNATED FOR PUBLICATION

No. 113,755

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JACQUELYN E. LAMB,
*Appellant*,

v.

BART LEROY BENTON,
*Appellee*.

MEMORANDUM OPINION

Appeal from Gray District Court; VAN Z. HAMPTON, judge. Opinion filed February 12, 2016. Reversed and remanded with directions.

*Jacquelyn E. Lamb*, appellant pro se.

No brief filed by appellee.

Before MCANANY, P.J., POWELL, J., and DAVID J. KING, District Judge, assigned.

POWELL, J.: Jacquelyn E. Lamb appeals the district court's order that she pay Bart Leroy Benton for horse training services, arguing, *inter alia*, the district court improperly retried the case de novo when it reviewed the case on appeal from the district magistrate judge who had ruled in her favor. While we disagree with Lamb's contention that the district court used the improper standard of review, we do find the district court erred in granting relief to Benton on grounds not pled and, therefore, reverse and remand with directions for the district court to enter judgment in favor of Lamb.

1

FACTUAL AND PROCEDURAL BACKGROUND

In 2010, Lamb, a resident of Georgia, owned numerous horses and had been involved in the breeding, training, and sale of those horses. At that time Miller was involved in the riding and training of horses. In May 2010, according to Lamb's testimony, Lamb entered into an oral contract with Miller to train her unbroken gelding named Timber Candy Man. In exchange, Lamb agreed to give Miller a female horse as either partial or full consideration. The record is unclear on this particular point. Benton's conflicting testimony before the magistrate judge was that Lamb agreed to pay Miller $400 per month for the training. It was expected at the time the agreement was finalized that Miller would take possession of both horses and would enjoy the use and provide training of Timber Candy Man over a period of approximately 5 months, at which time Timber Candy Man would be returned to Lamb. The record is silent as to the overall value of the female horse allegedly traded to Miller in exchange for Timber Candy Man's training.

In June 2010, Lamb met Miller in Arkansas with both horses. Miller loaded both horses in a horse trailer (and in the process broke the jaw of the female horse) and hauled them to Gray County, Kansas. There, Miller intended to train Timber Candy Man. Soon after, however, Miller entered into an agreement with Benton in which Benton would assume the duty to train Timber Candy Man for 5 months in exchange for $400 per month. Lamb was unacquainted with Benton and was unaware of Benton's agreement with Miller. Benton apparently completed Timber Candy Man's training over the course of 5 months and subsequently fed and stabled Timber Candy Man at the cost of $3 per day. At the time of this appeal, Timber Candy Man remained in Benton's care.

In February 2011, Gaylon Miller (Miller's brother and Lamb's then-boyfriend) made contact with Benton and demanded the return of Timber Candy Man. Benton refused to turn over Timber Candy Man without payment for the training and upkeep.

2

Gaylon was unable to pay and subsequently returned to Lamb empty-handed. The fate of the female horse Lamb allegedly traded to Miller in return for Timber Candy Man's training is unknown, as are the current whereabouts of Jerry and Gaylon Miller.

Lamb, assisted by the Gray County Sheriff, initiated an effort to recover Timber Candy Man in 2013. In response, Benton hired an attorney who instructed Benton to assert a lien against and retain possession of Timber Candy Man. The record is silent as to what actions Benton took to effectuate the lien aside from refusing to return Timber Candy Man.

On May 24, 2013, Lamb filed a limited action case in the Gray County District Court for replevin to recover possession of Timber Candy Man. Benton counterclaimed for the value of the training and feed he provided to the horse. A bench trial of the action was held on August 1, 2014, at which time the magistrate judge heard testimony from Benton and Lamb. On September 25, 2014, the magistrate judge issued a journal entry of judgment in favor of Lamb, mandating the return of Timber Candy Man. Benton appealed to the district court. The district court reviewed the record of the proceedings before the magistrate and made its own findings of fact and conclusions of law, resulting in a reversal of the magistrate judge's decision. The district court ordered Lamb to pay compensation to Benton in the amount of $2,270 and, upon receipt of the payment, ordered Benton to return Timber Candy Man to Lamb.

Lamb timely appeals.

DID THE DISTRICT COURT ERR IN ITS REVIEW OF THE MAGISTRATE JUDGE'S DECISION?

Lamb, acting pro se, presents a number of arguments in support of her position that the district court erred in reversing the magistrate judge's decision. Benton did not file a brief in response. Because of our practice of liberally construing submissions of pro

3

se litigants, see *Makthepharak v. State*, 298 Kan. 573, 581, 314 P.3d 876 (2013), we interpret the basis of her appeal to be that the district court erred in reviewing the case de novo by making new findings contrary to its appellate role in this case. Because this question involves interpretation of K.S.A. 2015 Supp. 20-302b, we consider such a question to be one of law over which our scope of review is unlimited. See *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015).

Lamb originally brought her case under the Kansas Code of Civil Procedure for Limited Actions, K.S.A. 61-2801 *et seq.*, which provides a simplified procedure for certain claims having a value of less than $25,000. K.S.A. 61-2802(a)(3). Such claims may be heard by a magistrate judge. K.S.A. 2015 Supp. 20-302b(a). Lamb tried her case before a magistrate judge not admitted to practice law in Kansas, who ruled in her favor. Appeals from a nonattorney magistrate judge's decision in a limited actions case are made to a district judge, and Benton appealed the adverse ruling to the district court as provided by Kansas law. K.S.A. 2015 Supp. 61-3902; K.S.A. 2015 Supp. 60-2103a.

Under K.S.A. 2015 Supp. 20-302b(c)(2), appeals from a final decision of a district magistrate judge not admitted to practice law in Kansas are reviewed de novo, except that in civil cases where there was a record of the proceedings, "the appeal shall be tried and determined on the record by a district judge." Here, there was a record. Therefore, unlike a traditional appeal, the district judge's role in this instance was to try the case solely on the record created before the magistrate, but the district judge was free to make findings of fact and conclusions of law independent of the magistrate's findings. See *In re L.C.W.*, 42 Kan. App. 2d 293, 298, 211 P.3d 829 (2009); *Karhoff v. Savage*, No. 113,213, 2015 WL 6457807, at *2 (Kan. App. 2015) (unpublished opinion); but see *Brown Family Trust v. Taylor*, No. 112,935, 2015 WL 8590390, at *3 (Kan. App. 2015) (unpublished opinion) (district court to apply appellate court standard of review of appeals from magistrate judge). Accordingly, the district judge did not apply an improper standard of review when he retried the case using the record created before the magistrate.

4

However, Lamb also challenges the district court's factual findings and legal conclusions; therefore, the question still remains whether the district court's findings of fact and conclusions of law are supported by the record. "When called upon to review the decision of a district court that has sat in review of the magistrate judge, we apply our appellate standard of review to the district court's decision." *In re L.C.W.*, 42 Kan. App. 2d at 298. We review the district court's factual findings under the substantial competent evidence standard, while its conclusions of law based on those facts are subject to unlimited review. See *Gannon v. State*, 298 Kan. 1107, 1175-76, 319 P.3d 1196 (2014). The substantial competent evidence standard is used "when the record includes conflicting testimony or when the case involves oral testimony that is conflicting." *State v. Brown*, 272 Kan. 843, 845, 35 P.3d 910 (2001). We do not reweigh the evidence or pass on the credibility of witnesses. *Cresto v. Cresto*, 302 Kan. 820, 358 P.3d 831, 842 (2015).

Our review of the record shows that Lamb's case against Benton was one of simple replevin, while Benton's case against Lamb was based upon the assertion of a lien and equitable principles of quantum meruit. According to the district court, Lamb was the undisputed owner of Timber Candy Man, meaning she was entitled to the return of the horse unless Benton could establish a proper claim.

Benton's counterclaim for payment under a lien theory was rejected by the district court. The district court specifically found that Benton had never complied with the statutory requirements for enforcing such a lien and therefore was not entitled to assert it. We need not determine the correctness of this finding because Benton never cross-appealed, making the ruling the law of the case. *In re Estate of Gardiner*, 29 Kan. App. 2d 92, 126-27, 22 P.3d 1086 (2001), *aff'd in part and rev'd in part* 273 Kan. 191, 42 P.3d 120, *cert. denied* 537 U.S. 825 (2002) (party's failure to cross-appeal made district court's ruling the law of the case).

As to the quantum meruit claim, it also was undisputed that Benton entered into his agreement with Miller, not Lamb. This is no doubt why Benton made a claim based on quantum meruit—not a claim based in contract—that he was entitled to payment from Lamb for his services because, otherwise, Lamb would be unjustly enriched. However, to be entitled to payment under this theory, Benton also had to prove Lamb knew about his arrangement with Miller and accepted it. See *Haz-Mat Response, Inc. v. Certified Waste Services, Ltd.*, 21 Kan. App. 2d 56, 65, 896 P.2d 393 (1995) (claim in quantum meruit requires appreciation or knowledge of benefit conferred), *aff'd in part and rev'd in part* 259 Kan. 166, 910 P.2d 839 (1996). The magistrate judge found that Lamb had no such knowledge, and the district court made the following factual finding on this point:

> "9. Jacquelyn E. Lamb was never acquainted with nor communicated with Bart Benton when making the agreement with Jerry Miller for the training of her horse and she was unaware of where Jerry Miller had taken her horse for the purpose of training until early in 2011."

The district court did not make any factual findings that Lamb knew about Miller's arrangement with Benton and accepted it, meaning Benton's counterclaim under quantum meruit for payment from Lamb could not succeed. This notwithstanding, the district court instead granted relief to Benton based upon what appears to be a bailment/assignment theory that Miller assigned his contract rights to Benton rather than making findings as to the validity of Benton's quantum meruit claim. See generally *Schoenholz v. Hinzman*, 295 Kan. 786, 789-91, 289 P.3d 1155 (2012) (discussion of farm bailments); *North Country Villas Homeowners Ass'n v. Kokenge*, 38 Kan. App. 2d 254, 260, 163 P.3d 1247 (2007) (generally, contract rights are assignable).

The district court's efforts on Benton's behalf are to no avail because Benton never made a claim for payment under either a bailment or a contract theory (at trial Benton's counsel specifically asserted they were not bringing a breach of contract claim), and it was beyond the district court's power to grant him relief under theories not pled. See *Frontier Ditch Co. v. Chief Engineer of Div. of Water Resources*, 237 Kan. 857, 864, 704 P.2d 12 (1985) (court may raise only jurisdictional issues *sua sponte*). Because the district court's findings precluded Benton from prevailing on his quantum meruit counterclaim and because the district court erred in granting him relief on grounds not pled, we reverse the district court and remand the matter with directions for the district court to enter judgment for Lamb.

Reversed.